## EYER *v*. STATE.

## Opinion delivered March 9, 1914.

1. EVIDENCE—TESTIMONY OF ABSENT WITNESS AT FORMER TRIAL.—The testimony of a witness at a former trial, on examination of the same issues, where the defendant was present and had an opportunity to cross examine, is admissible after it is shown that the witness is dead, or beyond the jurisdiction of the court. (Page 42.)

2. CRIMINAL PROCEDURE—JURISDICTION OF JUSTICE—WAIVER OF EXAMINATION.—It is the duty of a justice, under the law, to examine into the facts of a criminal case before him, and a waiver by defendant does not defeat the jurisdiction of the justice of the peace, to proceed with the inquiry for the purpose of determining the probable guilt or innocence of the defendant, and the amount of bail to be fixed, and testimony taken at such an examination is competent. (Page 43.)

3. EVIDENCE—TESTIMONY TAKEN AT EXAMINING HEARING—ADMISSIBILITY. —It is competent for the justice at an examining trial, to testify in the circuit court, as to the testimony before him, given by a witness, who is absent at the time of the trial in the circuit court. (Page 43.)

4. TRIAL—IMPROPER QUESTIONS—REMOVAL OF PREJUDICE.—Where, in a criminal trial, the court permitted improper questions to be asked the defendant, the prejudice thereof is removed, by the action of the court in striking the testimony from the record, and directing the jury not to consider the same. (Page 43.)

5. PRACTICE—RECEIVING VERDICT ON SUNDAY—ADJOURNING COURT ON SUNDAY.—In a criminal case court was adjourned Saturday to meet Sunday to receive the verdict. The verdict was received on Sunday and court was adjourned until a later date. *Held*, under Kirby's

Digest, § § 1538 and 2398, it was proper to receive the verdict on Sunday and adjourn court over to some other day. (Page 45.)

6. COURTS—HOLDING COURT ON SUNDAY—POWER TO ADJOURN.—Where a court is in session on Sunday, for a purpose authorized by law, it can then determine whether it will adjourn for the term or adjourn over to some other day for the purpose of completing the business of the court. (Page 45.)

Appeal from Jackson Circuit Court; *R. E. Jeffery,* Judge; affirmed.

*Jones & Campbell,* for appellant.

1. At common law, Sunday is *dies non juridicus,* and all judicial proceedings which take place on that day are void. 29 Ark. 238; Kirby's Dig., § 1538; 37 Cyc. 583; 20 Enc. Pl. & Pr. 1190; 12 Am. Dec. 290, and notes; 48 *Id.* 387; 43 Am. St. Rep. 290; 25 Am. Rep. 627-8-9; 63 Am. St. Rep. 824; 37 Am. Rep. 466; 58 Am. St. Rep. 223; 35 Am. Rep. 131. .

All judicial acts performed by the court on Sunday, except such as are expressly authorized by statute, are void, and the adjournment of court is a judicial act. *Supra.*

Any action of the court at a time when the holding of such court is not authorized by law is void. Am. Cas. 1912-B, p. 179; 3 Ark. 1; 22 Ark. 369; 27 Ark. 349; *Id.* 414; 32 Ark. 687; 48 Ark. 155, 2 S. W. 707; 49 Ark. 227, 4 S. W. 771; 60 Ark. 156, 29 S. W. 374.

2. The court erred in admitting the affidavit of the absent witness, Wilhite. There was no sufficient proof of diligent inquiry for him or that such inquiry would not have been availing. 58 Ark. 371; 84 Ark. 178.

The uncontradicted testimony shows that the statement of Wilhite was nothing more than the substance of his testimony before the coroner, and it was not made any weightier or more effective as legal evidence by the additional affidavit before the justice of the peace. 25 L. R. A. (N. S.) 868; 16 Ark. 568; *Id.* 1089; 99 Ark. 632; 76 Ark. 515-518; 66 Ark. 545, 546.

3. The court erred in permitting the prosecuting attorney to impeach appellant's character by insinuating questions and by questions as to former indictments. 100 Ark. 321-324; 80 Ark. 587-590; 70 Ark. 107-111; 78 Ark. 284; 72 Ark. 461; Wigmore on Ev., § 1278.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. A circuit court is required to remain in session until the business of the term is disposed of or until it is necessary to adjourn in order to reach the court next to be held in the circuit. Kirby's Dig., § 1320. The right is given by statute also to adjourn until Sunday for the purpose of receiving verdicts or discharging the jury. *Id.* § 1538. Also the circuit court may adjourn a regular session over to a special adjourned session, by order to that effect made in term time and entered on the record. *Id.,* § 1531; 104 Ark. 629-632.

In this case the court had ample power to take the action it did.

2. Wilhite's affidavit was properly admitted. 108 Ark. 316.

3. There was no error in the examination of witnesses. The court on appellant's motion struck out all the questions and answers relative to indictments for other crimes and instructed the jury not to consider them. If appellant desired a fuller statement from court to jury touching the matter it was his duty to make specific request therefor.

McCULLOCH, C. J. The defendant, Mike Eyer, appeals from a judgment of conviction of the crime of murder in the second degree, under an indictment which charged murder in the first degree. He killed one Noel O'Hare by striking him with an axe handle.

Defendant was engaged in the timber business along White River, and was floating blocks of timber down the

river past the city of Newport. There was a tent on one of the blocks for the accommodation of the men as the timber floated down the river. Deceased had been employed to assist in handling the timber and accompanied defendant on the trip down the river. A controversy had arisen between him and defendant concerning the payment of his wages, and O'Hare refused to do any more work, but insisted on remaining on the timber and continuing to the destination, where he threatened to assert a lien on the timber for his wages which he claimed had not been paid. While the defendant and O'Hare were in the tent together, defendant struck O'Hare with an axe handle and at once left the tent, and, meeting one of his acquaintances, told the latter that he had knocked a man in the head and asked the man accosted to take him to town in his buggy. O'Hare was taken to Newport during the afternoon, and that night was examined by a physician, who testified that he found him unconscious and that blood was running from his nose and mouth; that just back of the left ear the scalp was swollen and that the left eye was black and swollen. O'Hare died the next morning, and a *post mortem* examination was held, which disclosed the fact that his skull was fractured and membrane perforated and that there was a clot of blood on the brain.

The State introduced the testimony of an absent witness, one Wilhite, taken at the examining trial, in substance, as follows concerning the killing: "As I started out of the tent Mike (defendant) came in and I looked around and saw him grab an axe handle, and was standing behind Noel O'Hare, who was sitting on a box with a day book in his hand figuring. Mike said, 'Noel, what are you going to do?' and Noel said, 'I don't know.' Just as he said this, Mike struck him with the axe handle. Mike struck him three times on the body, then threw the axe handle down and went out of the tent and got into his boat and went on down the river. I never saw any butcher knife in his hands. O'Hare never made any demonstration or show of fight.

Mike Eyer was standing behind Noel O'Hare when he struck him. I never paid any attention to where the knife was, but there was a knife in the tent; we used it to cut meat.''

The defendant, in his testimony, gave a different account of the matter. He testified that he had been up the bank of the river to get some timber, and came back to the tent for the purpose of getting some chewing tobacco. He related the circumstances which ensued in the following language: ''I went into the tent past O'Hare and was squatted down by the suitcase getting my tobacco. I looked around and O'Hare was coming to a standing position and was about half straight with a butcher knife in his hands. I said to him, 'What are you going to do?' and he says, 'I will show you.' This is the knife that O'Hare had. There were two axe handles and a Winchester lying there and I grabbed one of the axe handles and when O'Hare got within my reach I struck him. I struck him because he was coming at me with a butcher knife. I thought that he was going to kill me. O'Hare was a man that weighed about 185 pounds and I was afraid of him.''

The testimony of other witnesses tended to show that Wilhite was not in the tent at the time defendant struck the blow. Two witnesses testified, in substance, that they were near the tent and heard the ''racket'' and that Wilhite was not in the tent but ran up toward it about that time.

There was a conflict in the testimony; but we are of the opinion that there was enough to warrant the jury in finding that the killing was done under such circumstances as made out the crime of murder in the second degree.

It is contended that the court erred in permitting the testimony of Wilhite to be introduced.

The coroner held an inquest over the body of deceased, and the prosecuting attorney attended in person and wrote down the testimony of witnesses on a typewriter. It does not appear that defendant was present

at the inquest, nor does it appear what the verdict of the coroner's jury was. Subsequently, defendant was arrested and carried before a justice of the peace for examination. He appeared there with one of his attorneys and offered to waive examination, but at the request of the prosecuting attorney the justice of the peace proceeded with the examination. The prosecuting attorney produced an unsigned copy of the testimony of each witness taken at the coroner's inquest, and as each witness was sworn and took the witness stand that testimony was read over to him, and each stated that it was his testimony and then signed it. This was done with reference to witness Wilhite, and the defendant was asked in each instance if he desired to cross examine. There is some testimony to the effect that defendant's attorney did cross examine Wilhite. At the trial of this case below it was proved that Wilhite was absent and not within the jurisdiction of the court, and the justice of the peace was permitted to testify, giving the statements of Wilhite at the examining trial. This was done over defendant's objection, and the ruling is now assigned as error.

The rule is thoroughly established by decisions of this court that the testimony of a witness at a former trial, on examination of the same issues, where the defendant was present and had an opportunity to cross examine, is admissible after it is shown that the witness is dead or beyond the jurisdiction of the court. The testimony of Wilhite comes within this rule. The method of examination before the justice of the peace was unusual, in that a written statement of his former testimony at the inquest was produced instead of his being examined orally. This related, however, not to the admissibility of the evidence, but to the method of examination, and affected only his credibility. The witness stated, after hearing the statement read, that it was his testimony concerning the facts of the case, and the defendant was given an opportunity to cross examine him. That was sufficient to make the testimony competent and to answer the constitutional requirement that the defend-

ant must have had an opportunity to face the witness and cross examine him. It was not, in any sense, an *ex parte* statement of the witness, made without an opportunity to defendant to cross examine.

Nor is the rule affected by the fact that defendant, at the examination, offered to waive the examination. Our statute makes it the duty of a justice of the peace to examine into the facts of the case before him, and a waiver by defendant does not defeat the jurisdiction of the justice of the peace to proceed with the inquiry for the purpose of determining the probable guilt or innocence of the defendant and the amount of bail to be fixed, if it is a bailable case. We think that the justice of the peace had jurisdiction to proceed with the examination and that the testimony was not rendered incompetent because of the fact that the examination was waived. The written transcript of the testimony of the witness was not, of itself, of any probative force, but the magistrate who presided at the examining trial testified that he heard the statement read over to the witness, who signed and approved it. It was not improper under those circumstances to permit the statement to be read to the jury. *Petty* v. *State*, 76 Ark. 515.

Another error is assigned in the ruling of the court in permitting the prosecuting attorney to interrogate the defendant concerning indictments found against him for other offenses.

The court permitted the questions to be asked, but subsequently sustained a motion to strike out the questions and answers.

It is insisted that the testimony was so prejudicial that it was beyond the power of the court to remove its effect.

We are of the opinion, however, that the action of the court in striking out the testimony from the record and directing the jury not to consider it was sufficient to remove the prejudicial effect. At any rate, the court did what the defendant asked, namely, to strike out the testimony, and therefore defendant is not in position to

complain of the failure of the court to do something more.

There is one other assignment of error which relates to the judgment of the court rendered upon the verdict. It is contended that the judgment was rendered after the lapse of the term, and therefore void.

The case was tried during the fall term of the Jackson Circuit Court, which began on September 8, 1913, and, unless adjourned over, would have expired at midnight on Saturday, October 4, 1913, in time for the judge of that circuit to convene the next regular term of court in Lawrence County, which, under the law, met Monday, October 6, 1913. The trial of this case was commenced during the latter part of the last week, and was submitted to the jury a short while before midnight of Saturday, October 4, whereupon the court made an order adjourning until Sunday morning for the purpose of receiving the verdict. On Sunday morning, October 5, the court convened for the purpose named, and about noon the jury returned a verdict into court, which was duly received by the court, and an adjournment was ordered to Saturday, October 18, 1913, which was a day beyond the estimated time for completing the term of court in Lawrence County. The verdict of the jury fixed the guilt of the defendant for the crime of murder in the second degree, but left the punishment to the court, the jury being unable to agree thereon. When the court convened on October 18 an order was made by the court fixing the punishment at ten years in the State penitentiary, and judgment was entered accordingly.

It is insisted that, while the court could, under the provisions of our statute, receive the verdict on Sunday, the adjournment over to another day was void and that the judgment entered on the adjourned day was void.

At common law Sunday was not a judicial day, and all proceedings had on that day were void. That is so under our statutes except as to proceedings which the statutes authorize on that day. The subject is one that

is entirely within the control of the Legislature, and our statute on the subject reads as follows:

"No court shall be opened or transact business on Sunday, unless it be for the purpose of receiving a verdict or discharging a jury, and every adjournment of a court on Saturday shall always be to some day other than Sunday, except such adjournment as may be made after a cause has been committed to a jury; but this section shall not prevent the exercise of the jurisdiction of any magistrate when it may be necessary in criminal cases to preserve the peace or arrest the offenders." Kirby's Digest, § 1538.

Another section of our statute bearing on this subject reads as follows:

"While the jury are absent the court may adjourn from time to time as to other business; but it shall be deemed open for every purpose connected with the cause submitted to the jury, until a verdict is rendered or the jury discharged." Kirby's Digest, § 2398.

It is earnestly insisted that, while the court had the power to adjourn over to Sunday morning for the purpose of receiving the verdict, it had no power to adjourn over until another day, and that the term lapsed because of the close of the term without an adjournment on Saturday over to another day beyond the term of the Lawrence Circuit Court.

We think the language of the statute itself settles this question contrary to the contention of counsel. The statute expressly provides that the court may be opened "for the purpose of receiving a verdict or discharging a jury" and that an order of adjournment can be made on Saturday to Sunday for that purpose; and when this and the other statute quoted above are considered together, it is very plain that the lawmakers meant to authorize the holding of court on Sunday for the purpose of receiving a verdict and discharging a jury, and the authority to open court on that day necessarily implies authority to adjourn it over to some other day. The receiving of the verdict is a judicial act and the statute

provides that the defendant shall have an opportunity to be present. The statute (Kirby's Digest, § 2406) provides that the jury shall be conducted into court by the officer and that when the verdict is read the jury may be polled at the request of the defendant. The court must, therefore, be open in order to receive the verdict, and since there is authority for opening it on Sunday for that purpose it necessarily follows that there is authority for adjourning over to another day.

Counsel concede this to be the correct rule if it were not for the fact that the term came to a close without an order having been made on a juridical day adjourning over to a day beyond the Lawrence Circuit Court. In other words, the contention is that, while the court could hold open on Sunday for the purpose of receiving the verdict and continue the court on the next day, it being in the midst of the term, it could not make an order on Sunday adjourning over to another day.

We do not think this contention is sound, for the reason that the term does not necessarily come to a close because the time has arrived to go and hold court in another county. There is express authority under the statute for an adjournment over to some day beyond the term of court to be held in another county. Kirby's Digest, § 1531; *McVay* v. *State,* 104 Ark. 629. So, the court being in session on Sunday for any purpose authorized by law, it can then determine whether it will adjourn for the term or adjourn over to some other day for the purpose of completing the business of the court. The adjournment over to another day is a judicial act, it is true, but the statute authorizes that act to be performed on Sunday as well as any other day where there has been an adjournment to that day for the purposes specified in the statute.

Judgment affirmed.