## SHEPPARD *v*. STATE.

Opinion delivered September 27, 1915.

1. HOMICIDE—NATURE OF CRIME—INSTRUCTION.—The indictment charging defendant with the crime of murder, did not allege that the killing was done while defendant was committing the crime of robbery. *Held*, it was reversible error to charge the jury that defendant would be guilty of the crime of first degree murder, if the killing was done while he was engaged in the perpetration of or attempt to perpetrate the crime of robbery.

2. EVIDENCE—CUMULATIVE TESTIMONY—DISCRETION—CAPITAL CASE.—It is within the sound judicial discretion of the trial court to limit the number of witnesses permitted to testify about a particular fact, and to decide where and when the introduction of cumulative testimony shall stop, and, while in capital cases this discretion should be cautiously exercised, it will not be controlled unless it appears to have been manifestly abused.

Appeal from Ouachita Circuit Court; *C. W. Smith*, Judge; reversed.

STATEMENT BY THE COURT.

Appellant was convicted of the crime of murder in the first degree for killing George Brian, upon an indictment regularly charging the offense, and which did not charge it was committed in the perpetration or attempt to perpetrate robbery, and from the judgment imposing the death sentence brings this appeal.

It appears from the testimony that George Brian, a little, frail, old man, who lived alone in a small hut in a pine thicket in an old field near Camden was murdered and his safe rifled of its contents on the night of Thanksgiving Day, 1914. His body was found on the next morning lying on the floor near the small safe in a pool of blood, with the top of his head chopped off and bruises and gashes upon it and a bloody ax and club were lying near it. The inner door of the little safe had been battered and torn off, and there was no money in it.

John Barnes, an accomplice, testified that he had suggested to appellant, who seemed greatly in need of money, that old man Brian had some money they could get, and that appellant said they would go down and take it away from him, that he would take the money if witness

would go with him; that appellant asked him if he had a pistol and upon being told he did not, requested him to get one which he tried and failed to do. He stated they went from Camden down to the home of the deceased on Saturday night before the murder on Thanksgiving, and that Bully Sheppard cut a club near the house and told him to stay outside while he went on down to get the money; that Sheppard went to the house, called the old man to the door, talked with him a minute and lighted a match and returned, saying, he didn't see any safe, and they went on back to town; that on Thanksgiving night, while it was raining, they returned to the vicinity of Brian's house and Sheppard cut another club, and he stood thirty or forty yards away from the house while Sheppard went in; that he was inside four or five minutes and returned running and said he had knocked the old man down with the club and finished him with the ax; that he had the money in his pocket. This occurred between 7:30 and 8 o'clock. They ran away from the vicinity and divided the money, he taking eight ten dollar bills and Sheppard seven of the money secured, and giving Sheppard five dollars of his own money to make the division equal. He said that they returned to Camden, six miles away, reaching there about 10 o'clock. This witness said he did not enter the house at all, nor see anything that was done there, and did not expect any violence would be necessary to secure the money, and thought that Bully would be able to scare the old man into giving it up with the club. The borrowed overcoat worn by him on the night of the murder had stains of blood spattered on the back of it and the skirt was bloody. His share of the money was found hidden in a fence corner where he told his father he had put it. No money was found upon appellant nor about his place. The jumper and pair of corduroy pants said to have been worn by him in the afternoon before the murder were found at his house wet and with wet blood upon them.

The defense of an alibi was interposed and appellant did not testify.

His statement to some witnesses, after his arrest, that he had been at Brian's house on the Saturday night before the murder to assist two white men in robbing the old man, but that after he went to the door he looked around and discovered his allies had gone away, "their nerve having failed," as he said, and that he went away and never went back and was not there when the murder was committed, was in evidence.

Nine witnesses were introduced, accounting for his whereabouts from about 6:30, when he ate supper at Peter Mayweather's, till 10 o'clock of the night of the murder. These witnesses stated that he came to Mayweather's about dark, after the family had finished supper, that supper was prepared for him about 6:30, that he went with some members of the family to a neighbor's of the name of Pierce, and from there in company with several people to a party or entertainment at Andy Williams' house; that he remained at the party, which was three miles or more from the house of the murdered man, for an hour or two and returned with the crowd to their homes as the 10:10 passenger train was passing.

The court refused to allow ten other witnesses, who were present and would have testified that the appellant was at the party and remained there past the time the murder was committed, to testify.

The court instructed the jury, giving among others over appellant's objection, instruction No. 2, as follows:

"2. You are instructed that if you find from the evidence in this case, beyond a reasonable doubt, that the defendant entered the residence of the deceased, George Brian, with intent to perpetrate the crime of burglary, robbery or larceny, and while engaged in the perpetration of, or the attempt to perpetrate either of said crimes, he struck and killed the deceased as charged in the indictment, it will be your duty to find him guilty of murder in the first degree.

It also amended his requested instructions, numbered 3 and 6, striking out certain parts thereof.

*R. K. Mason* and *A. N. Meek,* for appellant.

1.  The court abused its discretion in limiting the number of witnesses offered by appellant to establish his whereabouts on the night of the killing. While the testimony of the witnesses excluded was in a measure cumulative, in that it would have supported other evidence as to the same hours, dates and places, yet each witness to an alibi can offer facts recalled by him, distinct and separate from the testimony of every other witness introduced, and these facts when taken with the other testimony, give probative force to the main fact of the defense itself, the alibi. 42 Ill. App. 533; 83 *Id.* 329; 46 N. C. 150; 98 Tenn. 139, 38 S. W. 730; 45 Conn. 235, 29 Am. Rep. 677; 1 Binn. 46, 19 Dec. Dig. "Trial," § 57; 59 Ia. 243, 13 N. W. 109; 199 Mo. 352, 97 S. W. 867; 134 Ill. 310, 10 L. R. A. 576; 64 Ark. 121; 55 Ark. 163; 38 Cyc. 1345, 1346, 1347; 46 Cent. Dig. "Trial," § 133.

2.  Instruction 2 given by the court was erroneous. Proof of murder committed in the perpetration of, or attempt to perpetrate, a robbery would not sustain a charge of murder committed with malice aforethought and after premeditation and deliberation. 69 Ark. 177, 184; 74 Ark. 355.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1.  The court was right in limiting the number of witnesses on the question of *alibi.* Their testimony as offered was merely cumulative and would have added nothing to the testimony already introduced on this point. 42 S. W. (Mo.) 827, 830; 161 S. W. (Mo.) 766; 122 Pac. (Cal.) 435; 8 Ann. Cases, 828, note.

2.  There is no prejudicial error in instruction 2. The language in this instruction "he struck and killed the deceased *as charged in the indictment,*" we think, is sufficient to save it from the prejudicial effect claimed by the appellant. Moveover, the verdict of the jury stated that they found him guilty *as charged in the indictment.*

KIRBY, J., (after stating the facts).   (1)  It is contended that the court erred in giving said instruction numbered 2, and this contention must be sustained.  The indictment did not charge the offense to have been committed in the perpetration or attempt to perpetrate the crime of robbery, and the jury should not have been told to find the appellant guilty of murder in the first degree, if they found deceased was killed in the perpetration of the robbery.  There are two classes of murder in the first degree, separate and distinct, in one of which it is necessary only to allege that the killing was done in the perpetration of or attempt to perpetrate one of the felonies named in the statute, while in the other it is essential that the usual technical words, showing the killing was done after premeditation and deliberation be employed. *Cannon* v. *State*, 60 Ark. 564; *Rayburn* v. *State*, 69 Ark. 184; *Powell* v. *State*, 74 Ark. 355.

The giving of an instruction of like kind was held to be reversible error in *Rayburn* v. *State, supra*, where the offense was charged by the usual common law indictment.

The accomplice upon whose testimony the conviction was had did not see the offense committed, if his statement be true, and was surprised that killing had been resorted to by appellant, whom he had expected only to scare and intimidate the old man into giving up his money.

The case is not like that of *Powell* v. *State, supra*, where the court held there was ample evidence outside of that tending to show an offense committed in the perpetration of one of the statutory felonies and it was there also held that the remarks of the prosecuting attorney, objected to and not required withdrawn by the court, did not amount to the giving of an instruction by the court of the kind complained of herein.

It is next contended that the court erred in striking out a portion of one of the instructions relating to the accomplice's testimony, but the instruction as given contained the language of the statute relative thereto and was sufficiently full to cover the point.  Neither was there error in striking the clause out of the other in-

struction, relating to the credibility of witnesses which has been held to be erroneous when specifically objected to.

(2) It is next contended that the court erred in refusing to allow the ten other witnesses produced to testify in support of the alibi. Their testimony would have been cumulative and it is not disclosed that any of said witnesses had any special or peculiar knowledge that would have tended more strongly to convince the jury of the truth of their statements of the whereabouts of appellant than that already given by the numerous witnesses who had testified, nor that any of them were of such standing that their statements would have carried more weight than that of the others, and the court did not err in refusing to permit them to testify. It is within the sound, judicial discretion of the trial court to limit the number of witnesses permitted to testify about a particular fact and to decide where and when the introduction of cumulative testimony shall stop and, while in capital cases this discretion should be cautiously exercised, it will not be controlled unless it appears to have been manifestly abused. *Hall* v. *State,* 64 Ark. 121; *Jack Bayou Drainage District* v. *St. Louis, I. M. & S. Ry. Co.,* 116 Ark. 30, 171 S. W. 867; *State* v. *Lamb,* 42 S. W (Mo.) 827; note 8 Ann. Cases, 828.

It is unnecessary to discuss the other matters complained of, which will not likely occur upon a new trial.

For the error in giving said instruction the judgment is reversed and the cause remanded for a new trial.