SMITH *v.* STATE.

4752

262 S. W. 2d 272

Opinion delivered November 16, 1953.

Rehearing denied December 14, 1953.

*Bon McCourtney, Malcolm Ward* and *Claude B. Brinton,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

Ed. F. McFaddin, Justice. Mrs. Vanteen Dean Smith was tried on an information charging her with first degree murder for the poisoning of her husband, Harold Dean. She was convicted of second degree murder, and brings this appeal.

I. *Sufficiency of the Evidence.* We recite and view the evidence in the light most favorable to the Jury verdict, as is our rule on appeal.[1] The appellant (hereinafter called "Vanteen") operated a café in Riverdale, Poinsett County. Her husband, Harold Dean (hereinafter called "Harold"), was engaged in the fishing business with Gene Mote, and they were also drinking companions. The Dean living quarters were across the street from Vanteen's restaurant.

Gene Mote testified that on the afternoon of November 12, 1951, Mote went to Harold's room, while Vanteen was present and Harold was in bed drinking whiskey for a cold; and that Mote then borrowed Harold's truck for the announced purpose of going to Caraway to get some poison to kill rats. Mote testified that he went to Caraway, purchased a bottle supposed to contain strychnine, returned to Riverdale, again visited with Harold about 6:30 P. M.; that Vanteen asked Mote if he got what he went after, and he told her he did. Mote testified that the bottle of strychnine was then in his coat pocket; that he removed his coat and put it on a chair in the café; that later he went back to Vanteen's restaurant for his coat, and Vanteen was then engaged in mixing a drink for Harold Dean, in which Mote thought there was sugar, water, and whiskey; that Vanteen handed the drink to

---

[1] See *Wooten* v. *State,* 220 Ark. 755, 249 S. W. 2d 968, and cases there cited.

Mote and told him to take it to Harold; that he did take the drink to Harold, who drank it about 9:00 P. M. on the night of November 12th. Mote testified that when he got his coat on that trip, the bottle of strychnine was not in his pocket.

By other evidence it was established that Harold Dean died about 11:00 or 11:30 that night, which was about two or two and a half hours after drinking the contents of the glass that Mote brought to him. Mote further testified that approximately 30 days after Harold's death, he told Vanteen: "You killed my buddy"; and in that conversation, Mote quotes Vanteen as saying: "If they do dig him up, and he is poisoned, and if I go to the pen, you will go with me."

Vanteen had been "dating" Clyde Smith before Harold's death, and she married Clyde Smith shortly after Harold's death. Mrs. Lawery, Clyde Smith's mother, testified that she worked for Vanteen in the restaurant; that Harold had threatened Clyde because of his attentions to Vanteen; that Vanteen told Clyde in the presence of the witness, in the afternoon of November 12th: "Clyde, if my plans work like I want to, and I think they will, you won't have to leave Riverdale." Mrs. Lawery also testified that on three occasions, Vanteen had asked her to get some strychnine so Vanteen could put it in Harold Dean's whiskey.

Other witnesses testified as to damaging statements made to them by Vanteen. For example: Charlene Austin testified that on the afternoon before Harold's death, Vanteen told the witness: "I won't have to live with Harold another night."

Dr. Nettleship, State Chemical Examiner and a Pathologist of many years experience, testified that he performed an autopsy on the body of Harold Dean several months after his death; that strychnine in fatal quantities was found in the liver, kidneys, and intestines of Harold Dean; and it was witness' opinion that Harold Dean died from strychnine poisoning. The defense claimed that Harold Dean died from natural causes; or

that if he died from strychnine, it was either self-administered, or administered by someone other than Vanteen.

It was disclosed in the trial that Gene Mote, Clyde Smith and Vanteen Dean Smith had each been separately charged with the murder of Harold Dean, but only Vanteen was tried at the trial from which comes this appeal. The Court instructed the Jury that if it found that Gene Mote was an accomplice, then the defendant could not be convicted on the uncorroborated testimony of Gene Mote. We have detailed only enough of the testimony to establish that there was sufficient evidence to take the case to the Jury and support the verdict. In view of issues subsequently to be discussed, we here state that the evidence was sufficient to have supported a conviction for first degree murder.

## II. *Rulings Relating to Admissions of Evidence.*

(a) After the evidence for the defendant had been concluded, the State called James Price on rebuttal, who testified that two or three nights after Harold's death, the witness saw Vanteen and Clyde Smith spend the night together in the Rock Palace Tourist Court. It is claimed that this evidence was not rebuttal. In *Walker* v. *State,* 100 Ark. 180, 139 S. W. 1139, a similar claim was made; and in holding that the Trial Court had committed no error, we cited what is now § 43-2114, Ark. Stats., and said: "It rests within the sound discretion of trial courts to permit testimony to be adduced out of time, . . ." To the same effect, see *Bobo* v. *State,* 179 Ark. 207, 14 S. W. 2d 1115. We hold that there was no abuse of discretion by the Trial Court in the ruling here challenged.

(b) The witness, J. L. Wright was permitted to detail certain testimony over defendant's objection. Later the Court told the jury:

"The Court, at this time, is holding that that testimony was improperly admitted and I am now asking and telling the jury to disregard that testimony, not consider it for any purpose whatsoever. . . ."

Notwithstanding the statement of the Court as just quoted, appellant insists that the error of the Court in first admitting the testimony could not be cured by the subsequent withdrawal of the testimony and the Court's admonition. We have more than a score of cases, each holding that error in admitting testimony can be cured by the Court subsequently withdrawing the testimony and admonishing the Jury.[2] The evidence here involved comes within the purview of this rule.

III. *Instructing on Second Degree Murder.* The Trial Court instructed the Jury on both first degree murder and second degree murder, and the Jury returned a verdict of guilty of second degree murder. The defendant all the time contended that she was either guilty of first degree murder, or guilty of nothing, and she now vigorously insists: that by § 41-2205, Ark. Stats.: "All murder which shall be perpetrated by means of poison . . . shall be deemed murder in the first degree"; and that since she was charged with the crime of murder by poisoning, it was error to instruct on murder in the second degree, citing, *inter alia, Allen* v. *State,* 37 Ark. 433; *Thompson* v. *State,* 88 Ark. 447, 114 S. W. 1184; and *Thurman* v. *State,* 211 Ark. 819, 204 S. W. 2d 155.

The contention here urged was first discussed by this Court in *Allen* v. *State,* 37 Ark. 433, which was a case of murder committed by poisoning; and in that opinion, Chief Justice ENGLISH said:

"Until the Legislature shall think proper to enact that upon a charge of murder perpetrated by means of poison, etc., the jury must find the accused guilty of murder in the first degree, or acquit him, we know of no remedy except that of appropriate charges to the juries by the Circuit Judges."

The Legislature has not changed the law in this particular since the decision in *Allen* v. *State,* rendered in 1881. At common law there were no degrees of murder, and

---

[2] See *Eyer* v. *State,* 112 Ark. 37, 164 S. W. 756, Ann. Cas. 1916B 30; *Goynes* v. *State,* 184 Ark. 303, 42 S. W. 2d 406. And see cases collected in West's Ark. Digest, "Criminal Law," § 1169 (5).

every murder was punishable by death.[3]   The Arkansas Revised Statutes of 1837, in defining murder, in Chap. 44, Div. 3, § 1, contain no degrees or grades of murder; and § 7 of the same chapter and division said:

"The punishment of every person convicted of murder shall be death."

To remedy this situation and lessen the punishment in some cases of murder, the Arkansas Legislature, by Act of December 17, 1838,[4] provided in § 1, as found on page 121:

"That all murder which shall be perpetrated by means of poison or by lying in wait, or by any other kind of willful, deliberate, malicious, and premeditated killing, or which shall be committed in the perpetration of, or in the attempt to perpetrate, arson, rape, robbery, burglary, or larceny, shall be deemed murder in the first degree,[5] and all other murder shall be deemed murder in the second degree,[6] and the Jury shall in all cases of murder, on conviction of the accused, find by their verdict, whether he be guilty of murder in the first or second degree;[7]   .  .  . "

This Act of 1838 is the law today, and our cases have even recognized that there are two classes of first degree murder: (a) those committed by poison and attempts to commit the named crimes; and (b) those committed by willful, etc., and premeditated killing.[8]

In some of our cases, under the peculiar facts presented, we have held that the Court committed no error in refusing to charge on second degree murder when the indictment charged first degree murder and all the evidence showed that offense.   See *Clark* v. *State,* 169 Ark.

---

[3] See 26 Am. Jur. 161, *et seq.*

[4] At that time the Acts were not numbered, but were cited by date of approval and page in the printed volume.

[5] This portion of the Act is now found in § 41-2205, Ark. Stats.

[6] This clause of the Act is now found in § 41-2206, Ark. Stats.

[7] This portion of the Statute is now found in § 43-2152, Ark. Stats.

[8] For some cases making the distinction in the grades of first degree murder, see Judge BATTLE's opinion on re-hearing in *Rayburn* v. *State,* 69 Ark. 177, 63 S. W. 356; and see, also, *Sheppard* v. *State,* 120 Ark. 160, 179 S. W. 168.

717, 276 S. W. 849; *Alexander* v. *State,* 103 Ark. 505, 147 S. W. 477; *Simmons* v. *State,* 184 Ark. 373, 42 S. W. 2d 549; and *Jefferson* v. *State,* 196 Ark. 897, 120 S. W. 2d 327.

In other cases we have held that the Court committed no error in charging on second degree murder when the indictment charged first degree murder, even when committed by poisoning or attempt to commit one of the other named offenses. See *Allen* v. *State,* 37 Ark. 433; *Webb* v. *State,* 150 Ark. 75, 233 S. W. 806; and *Harris* v. *State,* 170 Ark. 1073, 282 S. W. 680.

It would be a work of supererogation to discuss all the cases and distinguish each on its facts.[9] The best summary we have found is that in *Rogers* v. *State,* 136 Ark. 161, 206 S. W. 152, in which Mr. Justice WOOD discussed and catalogued our cases in this language:

"Where the indictment charges murder in the first degree, and the undisputed evidence shows that the accused, if guilty at all is guilty of murder in the first degree, then it is not error for the court to refuse to give instructions authorizing the jury to return a verdict of guilty of one of the lower degrees of homicide. *King* v. *State,* 117 Ark. 82-88, 173 S. W. 852; *Dewein* v. *State,* 114 Ark. 472, 484, 485, 170 S. W. 582; *Thompson* v. *State,* 88 Ark. 448, 114 S. W. 1184; *Ringer* v. *State,* 74 Ark. 262; *Allison* v. *State,* 74 Ark. 444-453, 86 S. W. 409; *Jones* v. *State,* 52 Ark. 345, 12 S. W. 774; *Fagg* v. *State,* 50 Ark. 506, 8 S. W. 829; *Allen* v. *State,* 37 Ark. 433; *Curtis* v. *State,* 36 Ark. 284. But, on the other hand, it is not prejudicial error for the court to give an instruction on the lower degree in such case, because the error is one that results in the defendant's advantage. While it is error to give an abstract instruction, yet, under the settled rule of this court, if it affirmatively appears that the rights of the accused are not prejudiced thereby, the judgment will not be reversed

[9] Extensive Annotations on various phases of the question here discussed are found in 12 L. R. A., N. S. 935; 21 A. L. R. 603; 27 A. L. R. 1100; and 102 A. L. R. 1019. In the article on "Homicide" in 26 Am. Jur., textural statements appear on pages 544 and 551.

for such error. *Autrey* v. *State,* 113 Ark. 347, 168 S. W. 556; 14 R. C. L. p. 783, § 49.

"Such is the case here. The verdict shows that the jury believed the defendant guilty and they so found. Had the instructions on the lower grades of homicide not been given, the jury, finding the defendant guilty, must have returned their verdict for murder in the first degree. Such verdict, under the State's waiver, would have called for life imprisonment. The instructions on the lower grades of homicide, therefore, were in appellant's favor, and he can not complain of the error of the court in giving them. The exact point is ruled by the cases of *Vasser* v. *State,* 75 Ark. 373-381, 87 S. W. 635; *Burnett* v. *State,* 80 Ark. 225, 96 S. W. 1007. See also *Paxton* v. *State,* 108 Ark. 316-320, 157 S. W. 396; *Glenn* v. *State,* 71 Ark. 86, 71 S. W. 254; *McGough* v. *State,* 119 Ark. 57, 177 S. W. 398."

IV. *Oral Instructions.* After deliberating for some time, and before reaching a verdict, the Jury returned into open Court and asked the further elucidation of the law; and the Court orally answered the Jury's questions, in keeping with § 43-2139, Ark. Stats. Nowhere in the bill of exceptions is there any mention that the Court's answers were oral. So, even if Art. VII, § 23, of the Constitution applies to a situation such as the one here, nevertheless there was a waiver of the provision for written answers. *Richardson* v. *State,* 80 Ark. 201, 96 S. W. 752; *Hlass* v. *Fulford,* 77 Ark. 603, 92 S. W. 862. We have carefully studied the record and conclude: (a) that the said answers made by the Court do not contain the vices that the appellant claims; and (b) that the Court committed no harmful error in said answers.

All the other assignments have likewise been found to be without merit, so the judgment is affirmed.