264

5175                                        398 S. W. 2d 909

Opinion delivered February 14, 1966

*Shaver, Tackett & Jones,* for appellant.

*Bruce Bennett,* Attorney General,: *R. E. "Skip" Wallin* and *Fletcher Jackson,* Assistant Attorneys General, for appellee.

PAUL WARD, Justice. Appellant, charged with murder in the First Degree for killing Frankie Shipp, was convicted of murder in the Second Degree and given a sentence of twenty years in the penitentiary.

The jury's verdict was based entirely upon circumstantial evidence. For a reversal appellant urges only one point—there is no substantial evidence to sustain the jury verdict.

Appellant and Shipp lived as close neighbors within a deer hunting area. On November 9, 1964, at about one o'clock p.m.—the opening day of the deer season—appellant (according to his testimony) found Shipp dead (apparently having been hit by a rifle bullet) on the road about a half mile from appellant's home. Appellant promptly notified the officers, and later admitted he shot a deer near where the body was found and at approximately the time mentioned above. He

denied that he shot at Shipp or that he even saw him until he discovered his body.

A summary of the pertinent testimony is set forth below:

*Appellant*: I am 50 years old. I have known Shipp since 1944; We had a little trouble about nine years ago, but there has been no hard feelings since. We worked together this year. While I was hunting deer I found Shipp's body lying in the road—I moved the body off the road and promptly notified several people, including the sheriff; when the sheriff came I told him all I knew —told him I shot at a deer and showed him the deer tracks and also pointed out where I was standing when I shot.

*On Cross Examination*: I have been convicted of a felony twice—once for murder in the First Degree (over whiskey); When I found Shipp I don't remember seeing any blood; I saw other people out in the woods that day about noon and later; Shipp was killed within a quarter mile of my house; I heard some other shots that day, but not within 5 to 20 minutes of when I shot; There is quite a bit of undergrowth where Shipp was shot; I smoke cigarettes, normally Prince Albert.

*Richard Bircher, Sheriff*: When I arrived I saw blood spots in the road where the body had been; Appellant showed me one deer track where he said the deer (he shot at) entered the road; Found a wallowed-out place where, apparently, someone had been sitting and where there was a hand-rolled cigarette butt; Appellant said he was shooting a Marlin lever-action rifle; A bullet fired from the place where appellant said he was standing which hit the pine tree would not have been in line with the blood spots on the road.

*Richard Hall,* a registered engineer, who used the information furnished him by the investigating officers and by appellant, and who visited the place where Shipp

was shot, prepared a large plat which was introduced in evidence as the State's Exhibit No. 1. This plat designates (by letters, and in accord with the information obtained) the place where appellant stood (B) when he shot; the place where the deer was standing (C), and; where stains were found in the road (F.G.H.). From the plat it is obvious that the three places did not lie in a straight line. On the other hand, the plat indicates that point (B), point (F.G.H.), and (J) (where a bullet had ricocheted off of a pine tree) did lie in a straight line. Also, the elevations shown on the plat indicate that a bullet fired from point (B) to point (J) would have passed fifty seven inches above the ground at point (F.G.H.). The evidence shows Shipp was shot in the breast.

*John Shipp,* son of the deceased: I am fifteen years old, in the 8th grade; On Friday before my father was killed on Monday I went to appellant's home and gave him a note asking for $15 which he owed my father for some whiskey still parts; He said he could not pay it; I talked with appellant the following day, and he said he would burn our house down if it wasn't for us kids, and he also said tell my father " . . . to get his hunting license and get out in the woods and hunt like the rest of the people because he was going to kill him." This was all denied by appellant.

On appeal all the evidence submitted at the trial must be viewed in the light most favorable to a jury's verdict. See: *Higgins* v. *State,* 204 Ark. 233, 161 S. W. 2d 400; *Ashcraft* v. *State,* 208 Ark. 1089, 189 S. W. 2d 374; *Smith* v. *State,* 222 Ark. 650, 262 S. W. 2d 272, and; *Rollie* v. *State,* 236 Ark. 853, 370 S. W. 2d 188.

It is also a well established rule that, in criminal cases, if there is any substantial evidence to support the verdict of the jury it will be sustained on appeal. See: *Fields* v. *State,* 154 Ark. 188, 241 S. W. 901; the *Higgins* case, and; the *Rollie* case, *supra.*

We are not unmindful that this Court has consistently held, as pointed out in appellant's brief, that the jury's verdict must be reversed if it is supported solely by speculation or suspicion, and that circumstantial evidence alone is insufficient unless it is wholly inconsistent with the defendant's innocence, but we do not think this case falls within either of these categories.

In view of the record and the rules set out above, and realizing the jury is the sole judge of the credibility of the witnesses, we are unable to say the verdict here is not supported by substantial evidence.

Affirmed.