STATE of Tennessee, Petitioner,

v.

Thomas A. MELLONS, Respondent.

Supreme Court of Tennessee.

Nov. 7, 1977.

Robert L. Jolley, Jr., Asst. Atty. Gen., Brooks McLemore, Jr., Atty. Gen., State of Tennessee, Nashville, for petitioner.

J. Randall Shelton, Morristown, for respondent.

## OPINION

COOPER, Chief Justice.

Thomas A. Mellons was indicted on two counts of second degree murder in connection with the deaths of Brenda and Carolyn Parker, sisters of fifteen and seventeen years of age, respectively. At trial, evidence was presented that Mellons had arrived at the Parker home at approximately 9:00 p. m. on January 29, 1974, driving his father's car. The two girls left with him. Shortly after midnight, the police were called to investigate an accident that had occurred at a narrow country bridge. As the accident has been reconstructed, the Mellons' car approached the bridge at a high rate of speed, crossing over to the shoulder on the left hand side of the road some fifty to one hundred yards from the bridge. It struck the guard rail at the side of the bridge, flipped over, and landed on its roof in the shallow creek flowing under the bridge. Carolyn Parker was dead when the police arrived, and Brenda Parker died on the way to the hospital. Thomas Mellons, although seriously injured, was conscious and apparently lucid when the police arrived. While being helped into the ambulance, he was asked who had been driving, and answered, "I was." At that time, one of the investigating officers smelled alcohol on Mellons' breath. A test taken at the hospital after Mellons arrived showed a blood alcohol level of .10 percent. Similar tests showed that neither girl had been drinking. In his charge to the jury, the trial judge gave instructions concerning second degree murder, and both voluntary and involuntary manslaughter. Mellons was convicted of two counts of voluntary manslaughter, and sentenced to two years on each, the sentences to run concurrently.

On appeal, the Court of Criminal Appeals reversed on two grounds. First, they held that it was reversible error for the trial judge to instruct the jury on voluntary manslaughter, and then to accept a verdict finding the defendant guilty of that offense, when there was no evidence in the record to satisfy the legal requirements of the crime. Secondly, the court found that the trial judge had denied the defendant the opportunity to testify outside the presence of the jury concerning the circumstances under which a blood alcohol test

was taken on the night of the accident in support of his motion to suppress the results of the test.

 "A homicide of this character, generally speaking, is either involuntary manslaughter [citing cases] or second degree murder . . . ." *Edwards v. State*, 202 Tenn. 393, 304 S.W.2d 500, 502 (1957). Rarely will the facts be such as to show that the defendant has committed voluntary manslaughter. In the instant case, there is no question but that the evidence in the record fails to satisfy the legal requirements of the crime of voluntary manslaughter. Manslaughter is defined in T.C.A. § 39–2409 as "the unlawful killing of another without malice, either express or implied, which may be either voluntary upon a sudden heat, or involuntary, but in the commission of some unlawful act." There is no evidence which indicates that the defendant caused the death of the two girls "upon a sudden heat."

However, that, of itself, does not necessarily require that the conviction of the defendant for voluntary manslaughter be reversed. Under T.C.A. § 40–2520,

[u]pon an indictment for any offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment and guilty of any degree inferior thereto . . . .

Furthermore, under T.C.A. § 40–2518,

[i]t [is] the duty of all judges charging juries in . . . prosecutions for any felony when two (2) or more grades or classes of offense may be included in the indictment, to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so.

Voluntary manslaughter is a lesser degree of homicide than second degree murder, the offense with which the defendant was charged in this case. *Templeton v. State*, 146 Tenn. 272, 240 S.W. 789 (1922); *Bartlett v. State*, 1 Tenn.Cr.App. 60, 429 S.W.2d 131 (1968). If the statutes cited are taken literally, they mandate an instruction concerning and sanction a conviction of voluntary manslaughter in all cases in which the jury

is properly charged on second degree murder. However, as these statutes have been interpreted, it is not reversible error for the trial judge to fail to give an instruction on a lesser degree of an offense or on a lesser included offense of which there is no evidence in the record. *Owen v. State*, 188 Tenn. 459, 221 S.W.2d 515 (1949); *Powers v. State*, 117 Tenn. 363, 97 S.W. 815 (1906). To the contrary, the giving of instructions on offenses for which there is no evidence in the record is to be avoided. *Whitwell v. State*, 520 S.W.2d 338 (Tenn.1975). But the giving of such an instruction, even though it results in conviction of a lesser included offense not supported by the evidence, though error, is not necessarily reversible error. On appeal, a conviction of a lesser degree of the crime charged, or of a lesser included offense, will be upheld, even if there is no evidence in the record to establish the technical elements of that crime, if the evidence demands a conviction of a higher degree of homicide than that found by the verdict, and there is either no evidence in support of acquittal of the greater crime, or if there is, the verdict of the jury clearly indicates that the evidence in support of acquittal was disbelieved, on the theory that the defendant was not prejudiced by the charge and the resulting verdict. *See Reagan v. State*, 155 Tenn. 397, 293 S.W. 755 (1927); *Craig v. State*, 524 S.W.2d 504 (Tenn.Cr.App.1975); *Howard v. State*, 506 S.W.2d 951 (Tenn.Cr.App.1973). *See also* 102 A.L.R. 1019, 1026; 4 WHARTON'S CRIMINAL PROCEDURE § 545 at 29–30 (12th ed. Torcia 1976).

In the instant case, there is reason to believe that the giving of instructions on voluntary manslaughter did prove prejudicial to the defendant. This was not a situation in which the defendant was guilty either of the greater crime charged or of no crime at all, so that the jury's verdict, finding him guilty of the lesser degree of homicide, could best be understood as an act of mercy of which he would not be heard to complain. *See, e. g., Green v. State*, 512 S.W.2d 641 (Tenn.Cr.App.1974); *Smith v.*

*State,* 222 Ark. 650, 262 S.W.2d 272 (1953). Here, the jury would have been fully justified, under the evidence, in returning a verdict of guilty of involuntary manslaughter. That the jury chose to sentence the defendant to the statutory minimum for voluntary manslaughter suggests that they would not have found the defendant guilty of second degree murder if given the choice, as they should have been, between that crime and involuntary manslaughter. Under the circumstances, we agree with the Court of Criminal Appeals that the conviction of the defendant of the crime of voluntary manslaughter must be set aside.

In its assignments of error, the State has asserted that the Court of Criminal Appeals erred in placing upon the State the burden of showing that the defendant consented to the blood alcohol test taken after he arrived at the hospital. The Court of Criminal Appeals made no ruling on this issue, but merely held that the defendant was to be afforded the opportunity to give a jury-out explanation of the circumstances surrounding the blood test in support of his motion to suppress the results of the test. We agree with this holding.

The judgment of the Court of Criminal Appeals reversing the convictions and remanding the case for a new trial on the charge of involuntary manslaughter is affirmed.

FONES, HENRY, BROCK and HARBISON, JJ., concur.