IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned On Briefs December 14, 2004

## STATE OF TENNESSEE v. MICHAEL PAUL MONDELL

**Appeal from the Circuit Court for Jefferson County**
**No. 7474     O. Duane Slone, Judge**

_____

**No. E2003-02791-CCA-R3-CD - Filed February 17, 2005**

_____

The defendant, Michael Paul Mondell, was convicted of facilitation of the second degree murder of his father, Francis Mondell. The trial court imposed a 12-year Department of Correction sentence. The defendant appeals and challenges the sufficiency of the convicting evidence and the propriety of the sentence. We affirm the conviction but modify the sentence to eight years.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed as Modified.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Edward Cantrell Miller, District Public Defender, for the Appellant, Michael Paul Mondell.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and Charles L. Murphy, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

        In the light most favorable to the state, the evidence at trial showed that the 22-year-old defendant and his friend, Richard Farmer, were living at least temporarily with the victim, Francis Mondell, in Dandridge. The defendant's half-sister and the victim's daughter, 14-year-old Stacey Mondell, also lived in the residence.

        On August 6, 2002, the victim was arrested for beating Stacey Mondell. Upon the victim's release from jail, the defendant, Farmer, and a third man, Joe Walker, picked up the victim and took him home. Three days later, the victim's body was found in the vicinity of a rock quarry near his home. The victim had suffered a fatal gunshot wound to his head. A damaged sofa cushion and some bedding were wrapped with the victim's body in plastic bags and bound with tape and a rope.

Law enforcement officers went to the victim's home, where they encountered the defendant. Initially, the defendant gave statements to the police in which he confessed to shooting the victim with the victim's .357 handgun. The defendant claimed that he had placed the handgun inside the plastic in which the victim's body was enveloped; however, this claim was not born out by the officers' investigation. Later, the defendant recanted the confession; he claimed that Farmer killed the victim and had given the handgun to Walker. When the officers questioned Walker, he surrendered the handgun.

Walker testified at trial that the defendant and Farmer had come to Walker's house to get some plastic bags but would not tell Walker why they wanted the bags. Walker accompanied the two men to the Mondell residence because he believed they were going to show him how to "bend glass" to make neon signs. When they arrived at the residence, they went to a shop building behind the victim's house. Farmer and the defendant told Walker that they planned to kill the victim because he had beaten Stacey Mondell. Walker testified that when Farmer went inside the house, the defendant turned on a generator in the shop, saying that he wanted to "cover up the noise." Walker then heard a gunshot, and a few minutes later when he ventured into the house, he saw the victim lying on the sofa. Farmer was in command of the disposition of the body and cleaning the room. Farmer and the defendant loaded the victim's body in a Jeep Cherokee, and Walker rode with them to the rock quarry where Farmer and the defendant carried it into the undergrowth and left it.

Other evidence presented at trial showed that prior to the victim's death, Farmer visited the rock quarry with his then girlfriend, Anastasia Adkins, and the defendant. Adkins testified that while at the rock quarry, Farmer commented that the quarry would be a good place to dispose of a body. She also testified that Farmer had expressed his curiosity about how it would feel to kill someone and his belief that killing someone would give the killer a "high."

The evidence revealed that Richard Farmer had confessed to shooting the victim. Stacey Mondell testified that tension existed between Farmer and the victim. She testified that on one occasion after the victim had assaulted the defendant, Farmer told the victim that he had nearly killed his own father with a baseball bat and would be willing to do the same thing to the victim. The evidence also showed that the victim disapproved of Farmer smoking marijuana in the presence of Stacey Mondell. Through forensic evidence, the state established that the gun recovered from Walker fired the shot that killed the victim and that the victim had been killed on or near the sofa in his home.

Although the defendant had been indicted for first degree murder, the jury convicted him of the lesser included offense of facilitation of second degree murder, a Class B felony. After conducting a sentencing hearing, the trial court sentenced the defendant as a Range I offender to the maximum incarcerative term of 12 years.

# I. Sufficiency of the Evidence

In his first issue, the defendant challenges the sufficiency of the convicting evidence. When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at trial is sufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled in part by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

In determining the sufficiency of the convicting evidence, this court does not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. *Id.* In *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973), our supreme court said, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. *Id.*

Second degree murder is the knowing killing of another. Tenn. Code Ann. § 39-13-210(a)(1) (2003). "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." *Id.* § 39-11-403(a).

In his brief, the defendant claims that "he was either guilty as a principal or not guilty of any crime at all." Essentially, he posits that only Walker offered evidence of the defendant's pre-shooting role in the victim's death. This evidence, which would have supported a verdict of guilty of first degree murder through complicity, was rejected by the jury. Essentially, he argues that the jury's verdict obliterates Walker's testimony and with it any evidence that the defendant facilitated a homicide.

In the light most favorable to the state, however, the evidence supports a conclusion that Farmer's killing of the victim was at least knowing, and Walker's testimony supplies a basis for the jury finding that the defendant furnished substantial assistance to Farmer, knowing that he intended to shoot the victim. Thus, the evidence sufficiently supports the conviction of facilitation of second degree murder.

We need not tarry long over the claim that the jury's verdict in some way impugns itself. "[C]onsistency of verdict is not required, so long as 'the evidence establishes guilt of the offense upon which the conviction was returned.'" *State v. Hayes,* 7 S.W.3d 52, 57 (Tenn. Crim. App. 1999) (quoting *Wiggins v. State*, 498 S.W.2d 92, 94 (Tenn. 1973)). Furthermore, Tennessee courts have held that

> [o]n appeal, a conviction of a . . . lesser included offense[] will be upheld, even if there is no evidence in the record to establish the technical elements of that crime, if the evidence demands a conviction of a higher degree of [the offense] than that found by the verdict, and there is either no evidence in support of acquittal of the greater crime, or if there is, the verdict of the jury clearly indicates that the evidence in support of acquittal was disbelieved, on the theory that the defendant was not prejudiced by the charge and the resulting verdict.

*State v. Mellons*, 557 S.W.2d 497, 499 (Tenn. 1977); *see also State v. Davis*, 751 S.W.2d 167, 169 (Tenn. Crim. App. 1988). Thus, we conclude that the defendant's claim that the jury implicitly rejected Walker's testimony is unavailing.

## II. Sentencing

In the defendant's other issue, he claims the trial court erred in imposing a sentence of 12 years. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appellant. *Id*. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id*. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The trial court enhanced the defendant's sentence based on its finding that the defendant had "no hesitation about committing a crime when the risk to human life was high." *See*

Tenn. Code Ann. § 40-35-114(11) (2003). This enhancement factor, however, cannot be used to enhance a sentence for second degree murder because that factor is inherent in the offense. *State v. Belser*, 945 S.W.2d 776, 792 (Tenn. Crim. App. 1996). In that situation, enhancement factor (11) is essentially an element of the crime. *See generally* Tenn. Code Ann. § 40-35-114 (2003). We see no reason why the same reasoning should not apply to the lesser included offense of facilitation of second degree murder, an offense which resulted in a homicide and necessarily involved a high risk to human life. Thus, the trial court erred in applying factor (11), and we review the sentencing determination purely *de novo*.

The defendant claims that the trial court's maximum, 12-year sentence violated his right to trial by jury, based upon *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004). In *Blakely*, the Supreme Court held that other than when based on the fact of a prior conviction, a judicially imposed sentence cannot exceed the maximum sentence statutorily allowed "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant" unless the facts relied upon for enhancement are found to exist beyond a reasonable doubt by a jury. *Id.* at ____, 124 S. Ct. at 2537 (emphasis omitted). "[T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.* Thus, it appears that *Blakely* invalidates Tennessee's scheme of the trial judge's enhancing a defendant's sentence beyond a presumptive level via the judge's finding and applying enhancement factors other than that of prior criminal convictions. *See, e.g., State v. Anthony J. Ramey*, No. E2003-01840-CCA-R3-CD, slip op. at 13 n.4 (Tenn. Crim. App., Knoxville, July 15, 2004); *see also* Tenn. Code Ann. § 40-35-210(c)-(e) (2003) (establishing presumptive sentences and providing for increasing sentences above the presumptive level based upon the use of enhancement factors); *id.* § 40-35-114 (2003) (enumerating possible enhancement factors).

In the present case, the defendant was convicted of a Class B felony, an offense for which the presumptive sentence is eight years, the minimum in the applicable Range I. *See* Tenn. Code Ann. § 40-35-210(c) (2003) (providing that presumptive sentence for Class B offenses is the minimum in the range); *id.* § 40-35-112(a)(2) (2003) (establishing the minimum sentence for Range I, Class B offense at eight years).

The trial court utilized two enhancement factors to increase the sentence from eight to 12 years. *See* Tenn. Code Ann. § 40-35-114(2) (2003) (defendant has history of criminal convictions or criminal behavior), (11) (defendant had no hesitation about committing crime when risk to human life was high). Factor (11) was inapplicable by the trial judge pursuant to *Blakely*, as well as under state law. Although the trial court relied upon the defendant's previous history of criminal behavior,[1] the defendant had no prior record of criminal *convictions*. Thus, both bases for enhancing the defendant's sentence beyond eight years were improper according to *Blakely*. On *de*

---

[1] Evidence presented at the sentencing hearing showed that prior to accompanying Farmer and Adkins to Tennessee, he and Farmer stole $500 from a change machine in Alabama and that after arriving in Tennessee, the defendant and the victim bought a pound of marijuana for resale.

*novo* review, we are constrained to follow *Blakely*. Therefore, we modify the defendant's sentence to eight years.

In all other respects, the trial court's judgment is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE