IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 10, 2011

## SHUNDELL LYNN DICKERSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-A-538     Cheryl Blackburn, Judge**

**No. M2011-00644-CCA-R3-PC - Filed July 3, 2012**

Petitioner, Shundell Lynn Dickerson, was charged with first degree premeditated murder. Following a jury trial, Petitioner was convicted of the lesser-included offense of facilitation to commit first degree murder. Petitioner was sentenced as a Range III persistent offender to 60 years incarceration. This Court affirmed Petitioner's conviction and sentence on direct appeal. *State v. Shundell L. Dickerson*, No. M2006-02021-CCA-R3-CD, 2008 WL 2780591 (Tenn. Crim. App. at Nashville, filed July 18, 2008), *perm. app. denied* (Tenn., Jan. 20, 2009). Petitioner filed a timely *pro se* petition for post-conviction relief and was appointed counsel to represent him. Petitioner alleged several instances of ineffective assistance of counsel at trial. Following an evidentiary hearing, the trial court entered an order denying relief. Petitioner now appeals. Following a careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

James O. Martin, Nashville, Tennessee, (on appeal) and Kristen VanderKooi, Nashville, Tennessee, (at trial) for the appellant, Shundell Lynn Dickerson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

*Facts*

This Court summarized the facts underlying Petitioner's conviction in its opinion on direct appeal as follows:

> This case involved the fatal shooting of Eric Johnson, the victim, in a parking lot outside a "Fashion Force" store in Davidson County where he had shopped with two companions, Stormy Woods and Rhonda Thompson, on October 19, 2003. Fearing that the shooter would return, the victim's companions drove away and left the victim lying on the pavement. They drove to the home of a friend and called the police to report the shooting.
>
> At trial, the State presented three witnesses who testified that the defendant told them he killed the victim. Terrence Gregory testified that, while they were incarcerated together, the defendant admitted killing the victim. Katrina Frierson, the mother of defendant's two children, testified that the defendant told her that he shot the victim. Tamara Elliott, the wife of an associate of the defendant, also testified that the defendant told her he "knocked off" the victim. Additionally, the State presented evidence that a spent shell casing found at the murder scene was fired from the same gun as a spent shell casing found at the home of Ms. Frierson after the defendant shot her television during an argument.

*State v. Shundell L. Dickerson*, No. M2006-02021-CCA-R3-CD, 2008 WL 2780591, at *1 (Tenn. Crim. App. at Nashville, filed July 18, 2008), *perm. app. denied* (Tenn., Jan. 20, 2009) (footnote omitted).

*Post-conviction hearing*

Petitioner testified at the post-conviction hearing that he was indicted for first degree murder and possession of a handgun. Petitioner was convicted of facilitation of first degree murder. Petitioner testified that his trial counsel was ineffective for the reasons set forth in his petition for post-conviction relief. Specifically, counsel failed to: 1) impeach State's witness Katrina Frierson with prior inconsistent statements she made to police; 2) appropriately question Detective Coleman; 3) challenge the sufficiency of the convicting evidence on direct appeal; and 4) make appropriate argument as to sentencing. Petitioner testified that he believed counsel's deficient performance prejudiced him at trial and on appeal. Notably, Petitioner did not testify as to *how* he was prejudiced, other than adopting

-2-

his counsel's definition of "prejudiced" as that "it changed the result of the trial." This was only a rather vague assertion of prejudice, and provided no specific example of prejudice as a result of counsel's alleged deficient representation.

Laura Getz, one of Petitioner's two trial attorneys, explained that Katrina Frierson was the mother of Petitioner's children and that a "couple of days" after the shooting death of Eric Johnson, for which Petitioner was charged, there was another shooting incident involving Petitioner at Ms. Frierson's home where Petitioner shot the television. Ms. Getz reviewed portions of Ms. Frierson's trial testimony where Ms. Frierson had testified that after the shooting, Petitioner left the residence for a short time to go to the backyard but returned before the police arrived. Ms. Frierson also testified at trial that she told Detective Coleman that she did not know anything about the homicide. Ms. Getz testified that in an interview with Detective Coleman, Ms. Frierson stated that Petitioner did not leave the apartment and return before police arrived "because he was too high to move." Ms. Getz testified that she did not impeach Ms. Frierson during cross-examination with the prior inconsistent statement. Ms. Frierson also testified that she had told Detective Coleman that "Montez," Petitioner, and "Smoke," were present when the shooting at her residence occurred but that Smoke left before the incident. Ms. Getz explained that Smoke was Ms. Frierson's boyfriend at that time and that he had been charged with aggravated robbery involving a gun. However, Ms. Frierson testified at trial that the only people present were Petitioner, Ms. Frierson, and their children. Ms. Getz testified that she did not impeach Ms. Frierson with her prior inconsistent statement about who was present at the time of the incident.

Regarding the significance of the incident at Ms. Frierson's home, Ms. Getz testified that "the information regarding this evidence was the reason why he was convicted . . . [b]ecause it's the only thing that linked him to the homicide." She later qualified her statement by saying that it was the only physical evidence connecting Petitioner to the murder. Ms. Getz testified that it was not a strategic decision not to impeach Ms. Frierson, but that Ms. Getz "just missed it." She testified that police recovered a shell casing from the shooting at Ms. Frierson's residence that matched ballistics evidence from a shell casing recovered at the murder scene. Ms. Getz testified that there were three witnesses who testified at trial that Petitioner had confessed to shooting the victim, and she did not recall any evidence at trial that Petitioner had knowledge that another individual intended to kill the victim.

Dawn Deaner was Petitioner's other trial counsel. Ms. Deaner explained that an anonymous letter was sent to the police shortly after the victim's murder. In the letter, Clarence Elliott was blamed for the murder. She testified that she called Detective Coleman as a witness for the defense and attempted to introduce the letter as an exhibit. The trial court denied her request to introduce the letter. Ms. Deaner testified that the defense argued at trial

that the letter was not hearsay because it was offered not for the truth of the matter asserted, but instead was offered to establish that the police department had received information which was not investigated properly. The trial court allowed Ms. Deaner to question Detective Coleman about having received the letter, but the trial court excluded the contents of the letter. The trial court's ruling regarding the letter was challenged on direct appeal, and Ms. Deaner recalled that this Court held that the issue was waived because she did not question Detective Coleman about the investigation of the assertions in the letter.

Ms. Deaner testified that it was not a strategic decision not to question the detective about his investigation into the letter. She believed she "asked the questions that [she] was allowed [by the trial court] to ask" based on the trial court's ruling regarding the letter. Through her examination of Detective Coleman at trial, she established that he received the letter, personally addressed to him; that it concerned the death of the victim, Eric Johnson, and he was unable to identify the author of the letter; that it was the front of a Christmas card with a piece of paper enclosed in the envelope; that Detective Coleman fingerprinted those items, but he was unable to match the prints to anyone; that the letter was stored as evidence; and that Detective Coleman never showed the letter to the victim's family. Ms. Deaner testified that she did not question Detective Coleman specifically about his investigation into the assertions in the letter. Ms. Deaner testified, "if there were questions I could have asked that I did not ask, then I – that was an error on my part and an oversight on my part." Ms. Deaner made an offer of proof regarding the letter at the hearing on Petitioner's motion for new trial. Neither the letter, nor a copy of it, was made an exhibit at the post-conviction hearing, primarily because the post-conviction court strongly indicated such was not needed because the letter was "probably already in the record."

On cross-examination, Ms. Deaner testified that after receiving a copy of the letter in discovery, she investigated the allegations contained in the letter and found no evidence to support those allegations. Ms. Deaner showed the letter to Petitioner's family and confirmed some of the information contained in the letter. Ms. Deaner also testified that she did not recall objecting to a jury instruction on the lesser-included offense of facilitation. She also acknowledged that there was evidence at trial to suggest that there may have been more than one person involved in the commission of the offense.

Jeffrey DeVasher, an Assistant District Public Defender, testified that he represented Petitioner on his direct appeal. Mr. DeVasher did not raise as an issue on appeal that the evidence was insufficient to support Petitioner's conviction. He testified that he believed the evidence was sufficient to support the greater, indicted offense of first degree murder, and thus a challenge to the sufficiency of the evidence to support a conviction of the lesser included offense would be without merit.

Detective Hugh Coleman was called as a witness, however, the post-conviction court limited his testimony. Detective Coleman's interview with Katrina Frierson was admitted as an exhibit to the post-conviction hearing. The following occurred when Petitioner's counsel called Detective Coleman as a witness:

[THE COURT:] Next witness?

[PETITIONER'S COUNSEL]: Detective Coleman.

[ASSISTANT DISTRICT ATTORNEY]: Judge, can I just ask that we limit the questioning to things that are not already in one of the records in this case because Detective Coleman has been questioned several times about this letter.

THE COURT: Okay. Not only at pretrial hearing but at an offer of proof. *So if it's not new, I don't want to hear it.*

Raise your right hand to be sworn.

### DETECTIVE HUGH COLEMAN

was called as a witness, and having been first duly sworn, was examined and testified as follows:

THE COURT: You can always include his prior testimony in the record. I actually remember it.

[PETITIONER'S COUNSEL]: Well, Your Honor, that might greatly limit what I'm going to question Detective Coleman about.

THE COURT: *It ought to. We don't need to hear it again.*

[PETITIONER'S COUNSEL]: And, Your Honor, I will just put on the record that the testimony concerning his letter – or the letter he received, which has been the basis of testimony today already – I would like to admit the letter – well, can I admit the letter as an exhibit to this proceeding?

THE COURT: *Well, it's probably already in the record. Somewhere or another it is in that record.*

[PETITIONER'S COUNSEL]:     Well, it is.  It was an attachment to – and maybe a reference to where it's attached would be sufficient.  It was an attachment to [Petitioner]'s motion in limine concerning the letter.

THE COURT:     All right.  The State and – I'm sure we introduced it at the first hearing we had on it as well as to the offer of proof.

[PETITIONER'S COUNSEL]:     And then really as to the letter Detective Coleman – I'll just reference it for the record, Detective Coleman's testimony at the motion for new trial will really cover –

THE COURT:     Well, I had forgotten about that.

[PETITIONER'S COUNSEL]:     – the questions that I'm going to ask him about the letter.  So we will move on to –

THE COURT:     Okay.  So you want to – obviously we want to get around to incorporating the record.  You want to make sure that the testimony at the motion for new trial is also included.

[PETITIONER'S COUNSEL]:     Yes.

THE COURT:     Because we did do that, right, again?

**DIRECT EXAMINATION BY [PETITIONER'S COUNSEL]:**

Q.     Mr. Coleman, did you first interview Katrina Frierson about Eric Johnson's murder on 11-12-03?

A.     Yes, I did.

Q.     I have a transcript of that interview somewhere.

[PETITIONER'S COUNSEL]:     I think I used it on another witness.  Give me just a second.

[ASSISTANT DISTRICT ATTORNEY]:     Judge, I'm just going to ask if we can introduce that whole transcript as an exhibit.  And I don't see the need for asking Detective Coleman about what's in the

-6-

transcript. He's already been questioned by one witness [sic], and I'm going to ask that it be made in its entirety an exhibit.

THE COURT: Okay. Why don't we just do that?

[PETITIONER'S COUNSEL]: If you'll give me a second, Your Honor, I'll review what questions I was going to ask him.

THE COURT: Okay.

[PETITIONER'S COUNSEL]: And then I can respond. I think that's sufficient. I have a copy we can make an exhibit.

THE COURT: Okay. So far this is going to be our first exhibit, right? So Exhibit 1 is going to be the transcript of the interview of Detective Coleman of Katrina Frierson in '03, which would be long prior to this offense, correct?

[PETITIONER'S COUNSEL]: Correct.

(Whereupon, the previously mentioned document was marked as Exhibit Number 1.)

[PETITIONER'S COUNSEL]: I think everything I have used that I would have normally made an exhibit is part of the record. So I'm just looking through this file. If Your Honor might give me a minute to look through what I have at my desk as well.

THE COURT: Okay.

[PETITIONER'S COUNSEL]: So after the Court's ruling I'm not going to question Detective Coleman. So I pass the witness.

THE COURT: Oh, okay. Do you have any quesitons.

[ASSISTANT DISTRICT ATTORNEY]: No.

[PETITIONER'S COUNSEL]: He took my steam away.

-7-

THE COURT: Okay. So you can be excused again. Thank you for coming.

THE WITNESS: Yes, ma'am.

[Emphasis added.]

*Analysis*

To be successful in a claim for post-conviction relief, the petitioner must prove all factual allegations contained in the post-conviction petition by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. *See Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. *Id*. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact *de novo* with a presumption that those findings are correct. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely *de novo*. *Id*.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this Court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. *See Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975).

On appeal, Petitioner asserts that trial counsel was ineffective for the following reasons: 1) trial counsel failed to appropriately impeach Katrina Frierson with her prior inconsistent statements made to police; 2) trial counsel failed to appropriately question Detective Coleman about the anonymous letter incriminating someone else in the victim's

-8-

murder; and 3) appellate counsel failed to raise the issue of sufficiency of the evidence on appeal.

*Impeaching Katrina Frierson*

The inconsistent statements that Petitioner asserts trial counsel should have used to impeach Katrina Frierson at trial are that: she told Detective Coleman that her then-boyfriend Smoke had been at her house on the day of the shooting, but she testified at trial that only she, her children, and Petitioner were at her house at the time of the shooting; and Ms. Frierson testified at trial that after firing a gun at her television, Petitioner ran into the backyard and returned before police arrived, but she had previously told Detective Coleman that Petitioner had not gone outside "because he was too high to move." Petitioner asserts that counsel's failure to effectively cross-examine Ms. Frierson was detrimental to his case because Petitioner claims "the only physical evidence" linking him to the crime for which he was convicted was the ballistics match between the shell casing recovered after the shooting incident at Ms. Frierson's home and the shell casing found at the crime scene where the victim was killed. The State responds that counsel's failure to impeach Ms. Frierson was not deficient because the statements were not inconsistent, and the alleged deficiency was not prejudicial because there was other inculpatory witness testimony.

In its order denying relief, the post-conviction court found:

> As to the first alleged inconsistent statement, the Court has reviewed both Ms. Frierson's trial testimony and her police interview and finds there was no inconsistency as to her statements. As the State pointed out during the cross-examination of Ms. Getz, the State's question to Ms. Frierson at trial was who was present in her home *at the time* of the shooting, . . . , whereas during her interview with Detective Coleman she told him who had been at her house on the day of the shooting.
>
> . . . .
>
> As to the second alleged inconsistent statement, the Court finds it may be possible that Ms. Frierson made an inconsistent statement, but even if she had, Petitioner has not demonstrated he was prejudiced by counsel's alleged deficiency of not bringing the possible contradiction out at trial. At trial, Ms. Frierson testified that Petitioner went to the backyard after the shooting and returned before the police arrived. . . . The statement Petitioner alleges is inconsistent is Ms. Frierson's response to Detective Coleman's question as to where Petitioner was when the police arrived. Detective Coleman

inquired if Petitioner ran out of the house when the police arrived or whether he was apprehended in the house. Ms. Frierson's response was: "Naw [sic] they caught him in the house . . . Because he was so high he couldn't go nowhere or move." . . . . If Ms. Frierson's testimony had been explored, it could be these statements were, in fact, not inconsistent as it is possible Petitioner went in the backyard briefly after the shooting (as clearly he was able to move when he shot the television), but then when he returned he stayed in the house because he was too intoxicated to consider[ ] leaving. Nonetheless, even if Ms. Frierson's statements were found to be inconsistent, Petitioner has not demonstrated that he suffered prejudice due to the fact his trial counsel did not question Ms. Frierson at trial about her prior statement to Detective Coleman. As noted during the evidentiary hearing, the evidence against Petitioner included a ballistics match as well as two other individuals in addition to Ms. Frierson testifying that Petitioner had confessed to the shooting.

This Court has previously noted that "cross-examination is a strategic and tactical decision of trial counsel, which is not to be measured by hindsight." *State v. Kerley*, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991). Moreover, "[a]llegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." *Taylor v. State*, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991).

Petitioner's trial counsel acknowledged at the post-conviction hearing that the failure to cross-examine Ms. Frierson about her alleged inconsistent statements was an oversight rather than a tactical trial decision. Nevertheless, we conclude that Petitioner has not established that the evidence preponderates against the post-conviction court's finding that the statements were not inconsistent and that Petitioner was not prejudiced by counsel's failure to impeach Ms. Frierson. Three witnesses, including Ms. Frierson, testified at trial that Petitioner had confessed to them that he killed the victim. *See State v. Shundell L. Dickerson*, 2008 WL 2780591, at *1. In addition to those witnesses' testimony, there was the ballistics match between the two shell casings. Petitioner contends that Ms. Frierson's statement to Detective Coleman about Smoke was especially significant because Smoke was implicated in several aggravated robberies, and questioning Ms. Frierson would have presented evidence that someone other than Petitioner, "known for carrying guns," was at Frierson's home on the day Petitioner shot her television and the police recovered a shell casing. However, the record does not support Petitioner's contention. In her interview with Detective Coleman, Ms. Frierson denied that Smoke had a gun or fired a gun while in her home. She told Detective Coleman that no one other than Petitioner fired a gun in her house and that the shell casing found in her house came from Petitioner's gun. We agree with the State that the evidence does not undermine or rebut the ballistics evidence, and therefore,

-10-

Petitioner was not prejudiced by counsel's failure to cross-examine Ms. Frierson further about Smoke's presence at her home that day. Defendant is not entitled to relief on this issue.

*Cross-examination of Detective Coleman*

Petitioner next contends that trial counsel's failure to question Detective Coleman about the anonymous letter was deficient and prejudiced his defense.

The post-conviction court found that counsel's performance was not deficient because the court had ruled in a pretrial hearing regarding the letter that the content of the letter was inadmissible hearsay and that counsel limited her questioning according to the ruling. The post-conviction court also found that counsel's failure to inquire further about the letter did not prejudice Petitioner because Petitioner's counsel had the opportunity to investigate the allegations of the letter and, in doing so, found no admissible exculpatory evidence.

In the direct appeal, Petitioner argued that the trial court erred in excluding the contents of the letter because it was not offered for the truth of the matter asserted (that someone else killed the victim), but rather to show that detectives failed to adequately investigate the case. This Court held that Petitioner waived the issue because he "failed to take steps to nullify the error when he did not ask pertinent questions regarding the investigation into the contents of the letter." *State v. Shundell L. Dickerson*, 2008 WL 2780591, at *2. Petitioner's trial counsel testified at the post-conviction hearing that she questioned Detective Coleman at trial about the letter to the extent the trial court's ruling allowed, and if she failed to question further, that was "error on [her] part."

In the direct appeal, this Court concluded that Petitioner "ha[d] not shown that the letter was critical to his defense. The letter showed no failure by the police but merely suggested other leads they might follow in their investigation." *Id*.

Based on the record before us, it appears the trial court made a pretrial ruling concerning the admissibility of the letter and its specific contents, but gave trial counsel some latitude to question Detective Coleman about circumstances surrounding receipt of the letter and what was done or not done as a result of receiving the letter. Trial counsel limited her cross-examination of Detective Coleman based upon her understanding of the trial court's ruling. Petitioner's appellate counsel raised the issue on direct appeal, and a panel of this Court held that the issue was waived because trial counsel failed to pursue a line of questioning of Detective Coleman regarding his investigation into "the allegations included in the letter." The post-conviction court is the same judge who presided over the trial. The post-conviction court made very clear at the post-conviction hearing that "the allegations

-11-

included in the letter" were not going to be made known to the jury. Specifically, the post-conviction court stated,

> THE COURT: But the general is correct. It wasn't coming in for the truth, so they couldn't be considered for the truth in that. So it's not crucial evidence. And don't misunderstand a single thing if you don't get it this way. The contents of that letter w[ere] not coming in front of the jury. I'm as firm about that today as I was when it happened for the very reason I said – for several reasons. One, it's hearsay. But the other part of it is we don't know who wrote that letter. It could have been Mr. Dickerson himself to send the police to get them off on a rabbit track. So why should somebody be allowed to gain from that when you don't know who wrote the letter? Now, the other part of it is, as Ms. Deaner said in her testimony, they couldn't – they didn't – couldn't bring – if they had found something that would have corroborated that Eric Johnson [sic] did it, they could have tried to bring those live witnesses in front of the Court. They were never prevented from doing that. But they couldn't find anything.

We note that post-conviction counsel indicated the intent to question Detective Coleman at the post-conviction hearing about the anonymous letter and submit the letter as an exhibit. We have set forth elsewhere in this opinion the proceedings concerning Detective Coleman being called as a witness. Even giving the post-conviction court the benefit of the doubt, it appears from the transcript in this case that the post-conviction court erroneously limited Petitioner's counsel in her ability to put on proof in Petitioner's post-conviction case. The burden of proof imposed upon petitioners in post-conviction cases is well established. *See* Tenn. Code Ann. § 40-30-110(f) (a petitioner must prove allegations of fact by clear and convincing evidence); *see also Dellinger v. State*, 279 S.W.3d 282 (Tenn. 2009).

A post-conviction court should *never* limit a petitioner's counsel's ability to submit proof by restricting the presentation of evidence for any reasons other than those contained in statute, case law, or rules. In other words, the opinion that "if it's not new, I don't want to hear it," is not a proper basis to limit counsel's presentation of proof in a post-conviction case. Also, simply because some testimony by a witness in a post-conviction hearing may be a repeat of prior testimony during the trial or proceedings related to the trial that is not a basis to limit examination at the post-conviction hearing. We note this specific exchange just after Detective Coleman was called as a witness by Petitioner at the post-conviction hearing:

**DETECTIVE HUGH COLEMAN**

-12-

was called as a witness, and having been first duly sworn, was examined and testified as follows:

THE COURT: You can always include his prior testimony in the record. I actually remember it.

[PETITIONER'S COUNSEL]: Well, Your Honor, that might greatly limit what I'm going to question Detective Coleman about.

THE COURT: It ought to. We don't need to hear it again.

Notwithstanding the fact that the post-conviction court apparently erroneously cut off Petitioner's presentation of proof, Petitioner's counsel failed to request the ability to make an offer of proof. Whenever a post-conviction counsel is confronted by a post-conviction court's insistence upon limiting the proof, counsel should *always* request the ability to make an offer of proof to preserve the issue for appeal. Since counsel did not do this, we have no option other than to conclude Petitioner is not entitled to relief on this issue.

*Failure by counsel to raise sufficiency of the evidence on direct appeal*

Petitioner asserts that his appellate counsel rendered ineffective assistance of counsel because appellate counsel failed to challenge on appeal the sufficiency of the evidence to sustain his conviction of the lesser included offense of facilitation of premeditated first degree murder. The facilitation statute is titled as "Criminal responsibility for facilitation of felony." Tenn. Code Ann. § 39-11-403. The elements of this offense are:

A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony.

*Id*.

We glean that Petitioner's argument is that at trial there was absolutely no evidence, direct or circumstantial, that Petitioner knew another person was going to commit the specific felony of premeditated first degree murder, and there was absolutely no evidence, direct or circumstantial, that Petitioner knowingly furnished "substantial assistance" to anyone in committing the offense of premeditated first degree murder of the victim.

-13-

There are two significant events that must be addressed in this case. First, the entire record of the first trial, which was contained in the appellate record on the direct appeal, was apparently destroyed at its archival location during the massive flood in downtown Nashville the first few days of May, 2010. Second, the Tennessee Supreme Court filed its opinion in *State v. Parker*, 350 s.W.3d 883 (Tenn. 2011).

At the post-conviction hearing, Petitioner's appellate counsel acknowledged that he did not challenge the sufficiency of the evidence to sustain the conviction for facilitation of premeditated first degree murder. Appellate counsel testified, "I think also given the proof that connected [Petitioner] to the murder weapon and the proof that there was more than one person in the car from where the shots were fired, that that arguably could have supported a verdict for facilitation."

Appellate counsel made this remark during cross-examination by the State. Just prior thereto, appellate counsel acknowledged that Tennessee's appellate courts have routinely reviewed the sufficiency of the evidence when a defendant is convicted of an offense which is not a charged offense, but is a lesser-included offense. However, he added, "I don't recall any cases where the appellate courts have reversed a conviction based on insufficient evidence while simultaneously holding that there was sufficient evidence to support a greater charge."

We agree with the State that appellate counsel relied upon case law, including our supreme court's opinion in *State v. Mellons*, 557 S.W.2d 497 (Tenn. 1977), *overruled by State v. Parker*, 350 S.W.3d 883 (Tenn. 2011), in declining to challenge the sufficiency of the convicting evidence. The same principles apply in determining the effectiveness of both trial and appellate counsel. *See Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995). A petitioner who alleges ineffective assistance of appellate counsel must prove both that 1) appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and 2) absent counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful before the state's highest court. *See Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d756 (2000).

Because the sufficiency of the evidence issue was not raised on appeal, this Court's opinion in the direct appeal contains only a brief summary of the facts necessary to address the issues that were raised, as is observed in our quotation from that opinion herein. Since the entire appellate record of the direct appeal is missing because it was apparently destroyed by the disastrous flood in Nashville in May, 2010, we are unable to examine that record to review the sufficiency of the evidence to support the conviction of facilitation of premeditated first degree murder. In addition, Petitioner did not make an appropriate attempt to make as an exhibit at the post-conviction hearing a copy of any portion of the record in the

direct appeal. While post-conviction counsel initially attempted to make an exhibit copies from some portion of the direct appeal record, counsel failed to object to the post-conviction court's erroneous ruling which made the entire original appellate record, which was not even present at the post-conviction hearing, an exhibit to the post-conviction hearing. The following transpired at the post-conviction hearing after all testimony had concluded and prior to closing arguments:

> [POST-CONVICTION COUNSEL]: .... If you would give me just a minute before we wrap things up to make sure that I – that everything else I would have normally made an exhibit is part of the record. And the petitioner rests.
>
> THE COURT: Okay. I guess, General, you need to make the trial transcript –
>
> [ASSISTANT DISTRICT ATTORNEY]: Right. The original record, I would ask that that be made an exhibit.
>
> THE COURT: The original trial record would be Exhibit 2, which remains in the custody of the [Court of Criminal Appeals].
>
> [ASSISTANT DISTRICT ATTORNEY]: Which I'm sure includes the motion for new trial and other things we've referenced.
>
> THE COURT: Yes.

After the post-conviction petition had been filed, the State filed a motion in this Court to obtain access to the entire record of the direct appeal of Petitioner's conviction. This Court granted the motion on July 16, 2009. The appellate court clerk's records reflect that the record was sent to the trial court clerk on July 16, 2009, and was returned to the appellate court clerk's office on August 28, 2009. This Court's order specifically provided in part as follows:

> This matter is before the Court upon the State's motion to withdraw the record in the above-captioned case. According to the State, the record is needed in the trial court for a pending post-conviction proceeding. The State's motion is hereby granted. The Clerk shall transfer the record in this case to the Davidson County Criminal Court Clerk's Office. The record shall remain under the supervision of the trial court clerk, during which time counsel may review and/or copy relevant portions of the original record.

-15-

This Court contemplates that when an attorney accesses the original record, it is for the purpose of determining which portions of the record will be needed in the pending proceeding. The trial court clerk shall not permit any portion of the archived record to leave its office, except to be taken into court. Furthermore, no portion of the original record shall be attached to a pleading or introduced as an exhibit. The attorneys may copy the entire record, or those portions deemed necessary, and may request certified copies to be introduced as exhibits to the post-conviction hearing.

However, if the original record, or any portion thereof, such as the transcript of evidence, is voluminous or an inconvenience to copy, the judge may enter a written order describing the record, or part thereof, referenced during the hearing. The written order shall then be introduced as the exhibit, and this Court will take judicial notice of the original record incorporated by reference in the post-conviction hearing by the trial court's written order.

Thus, the method used by the post-conviction court to make an exhibit of the direct appeal record was not consistent with this court's order, and the trial court did so without objection by Petitioner. In any event, our supreme court's decision in *Parker* supports Petitioner's assertion that his appellate counsel should have challenged the sufficiency of the evidence to support his conviction. In other words, appellate counsel should *not* have relied upon *Mellons* for the proposition that as long as there was sufficient evidence to sustain the conviction of the charged offense of premeditated first degree murder, then Petitioner's challenge to the sufficiency of the evidence for the conviction of any lesser-included offense would be automatically without merit.

In *Parker*, the Tennessee Supreme Court stated that, "[t]he issue before us is whether, in spite of insufficient evidence to support the offense of second degree murder [a lesser-included offense], the conviction should nevertheless be affirmed because there was sufficient evidence to support the greater offense of felony murder." *Parker*, 350 S.W.3d at 905.

In *Mellons*, the supreme court stated,

On appeal, a conviction of a lesser degree of the crime charged, or of a lesser included offense, will be upheld, even if there is no evidence in the record to establish the technical elements of that crime, if the evidence demands a conviction of a higher degree of homicide than that found by the verdict, and there is either no evidence in support of acquittal of the greater

crime, or if there is, the verdict of the jury clearly indicates that the evidence in support of acquittal was disbelieved, on the theory that the defendant was not prejudiced by the charge and the resulting verdict.

*Mellons*, 557 S.W.2d at 499.

In *State v. Bolin*, 922 S.W.2d 870 (Tenn. 1996), *overruled by State v. Parker*, 350 S.W.3d 883 (Tenn. 2011), the supreme court cited *Mellons* and stated,

[i]t is well-settled that when a jury is instructed as to a lesser-included offense of that charged in the indictment, a conviction of the lesser-included offense may stand, even if the technical requirements of that offense are not present, if the evidence supports the greater offense. [Citations omitted.] Because we conclude that the evidence supports a finding of aggravated rape, the jury's verdict of aggravated sexual battery may stand.

*Bolin*, 922 S.W.2d at 875.

However, in *Parker*, our supreme court ruled that *Mellons* and *Bolin* did not actually stand for the proposition quoted above from these two supreme court opinions. The court in *Parker* held,

As in *Mellons*, however, this Court did not actually hold in *Bolin* that a defendant may stand convicted of a lesser-included offense *where there is no proof as to an element necessary to support the lesser-included offense*, even if the proof would support the greater offense. Rather, where a trial court *properly* instructs the jury on lesser-included offenses, and the jury thereupon convicts the defendant of a lesser-included offense, the defendant will not later be heard to complain. *See Bolin*, 922 S.W.2d at 875 (affirming a conviction of aggravated sexual battery charged as a lesser-included offense of aggravated rape where the proof allowed the jury to believe testimony establishing sexual contact and to reject testimony establishing sexual penetration).

*Parker*, 350 S.W.3d at 909-10.

To remove any doubt concerning the applicability of *Mellons* and *Bolin* for the proposition relied upon by Petitioner's appellate counsel, the court in *Parker* expressly stated, "[t]o sustain a conviction of a lesser-included offense, the proof must be sufficient to support

each and every element of the conviction offense. To the extent that *Mellons* and its progeny hold to the contrary, they are overruled." *Id*. at 909.

We are unable to analyze the issue presented by Petitioner because he fell short of ensuring that a copy of the direct appeal record was made an exhibit to the post-conviction proceedings, and the original record has been destroyed. We cannot speculate as to whether there was sufficient evidence to support the facilitation conviction when we are unable to review a transcript of the trial proceedings. It is not Petitioner's fault that the original record is missing and was presumably destroyed in a flood. However, had Petitioner properly sought to present copies of any necessary portions of the direct appeal record to be made an exhibit in the post-conviction proceedings, then the loss of the original record would not affect these proceedings. If Petitioner obtains information that another copy of the direct appeal record can be made a supplement to the record on appeal of the post-conviction proceedings, Petitioner can timely file a petition to rehear in this Court, pursuant to Rule 39 of the Tennessee Rules of Appellate Procedure. Petitioner is not entitled to relief on this issue.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

-18-