IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 10, 2011
Petition to Rehear Granted October 9, 2012

**SHUNDELL LYNN DICKERSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2004-A-538      Cheryl Blackburn, Judge**

**No. M2011-00644-CCA-R3-PC - Filed February 27, 2013**

Petitioner, Shundell Lynn Dickerson, appealed the trial court's denial of post-conviction relief, and this court affirmed the judgment of the post-conviction court. *Shundell Lynn Dickerson v. State of Tennessee*, No. M2011-00644-CCA-R3-PC, 2012 WL 2564376 (Tenn. Crim. App. at Nashville, filed July 3, 2012). In that opinion, Petitioner raised the issue of whether his appellate counsel was ineffective for failing to challenge the sufficiency of the convicting evidence on direct appeal. We acknowledged that pursuant to our supreme court's decision in *State v. Parker*, 350 S.W.3d 883 (Tenn. 2011), appellate review of the sufficiency of the evidence must be undertaken with respect to the offense for which a defendant was convicted rather than the greater offense with which he or she was charged. We were precluded, however, from fully considering the issue because the summary of the facts contained in our opinion in the direct appeal was not adequate to allow for review of the issue, and, through no fault of Petitioner, the appellate record in the direct appeal was destroyed in the historic Nashville flood in May, 2010. Therefore, this court could not determine from the record whether Petitioner suffered prejudice by appellate counsel's deficient performance in failing to challenge the sufficiency of the convicting evidence on appeal. Since the filing of that opinion, this court has granted Petitioner's petition to rehear the issue of the ineffectiveness of appellate counsel, and Petitioner has supplemented the record with copies of the trial transcript. Both parties have filed supplemental briefs. After a review of the record before us, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

James O. Martin, Nashville, Tennessee, (on appeal) and Kristen VanderKooi, Nashville, Tennessee, (at trial) for the appellant, Shundell Lynn Dickerson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION AFTER REHEARING**

**Facts**

*Trial*

Stormy Woods testified that on the afternoon of October 19, 2003, she went shopping with her friend Rhonda Thompson and Ms. Thompson's friend Eric Johnson. Ms. Woods was parked outside of a strip mall, waiting on Ms. Thompson and Mr. Johnson to return to the car from the store. When they returned to the car, "[j]ust as [Ms. Thompson] had opened the passenger side door a car came from behind [them] and started shooting." Ms. Woods saw Mr. Johnson get shot and fall to the ground. She testified that she saw the shooter in the driver's seat of the car, which she described as a newer, four-door, dark green car. She could not tell if anyone else was in the car. She described the shooter as a "medium skinned, African-American man, . . . around mid to early twenties." He was wearing a sports jersey, and he had a black bandana on his head. When the shooting stopped, Ms. Thompson got inside the car and Ms. Woods drove away. Ms. Thompson told Ms. Woods to leave Mr. Johnson there. They drove to a friend's house, and the friend called the police. When the police arrived, Ms. Thompson was taken to the hospital. Ms. Woods testified that her car had four or five bullet holes in the passenger side. She was not able to identify Petitioner as the shooter, and she did not see anyone besides the shooter inside of the vehicle.

Rhonda Thompson testified that as she and Mr. Johnson approached Ms. Woods' car, a dark-colored car with tinted windows "drove up and started shooting." She testified that the driver's side window was down and she saw one person firing a gun. Ms. Thompson was unable to identify the shooter, but she testified that the shooter was African-American and "light skinned." Ms. Thompson also testified that she saw one other person inside the vehicle.

Officer Terry Burnett, of the Metro Nashville Police Department, responded to the scene of the shooting. When he arrived, he saw Mr. Johnson lying on the ground and "bleeding extremely bad." He also saw several shell casings on the ground. An ambulance arrived and transported Mr. Johnson to the hospital.

Dr. Feng Li, an assistant medical examiner for Davidson County, testified that Mr. Johnson suffered six gunshot wounds. Dr. Li recovered three projectiles from Mr.

2

Johnson's body. The cause of his death was multiple gunshot wounds and the manner of death was homicide.

Tameka Buchanan witnessed the shooting. She was leaving the parking lot when she heard gunshots. She saw two cars fleeing the scene. One of the cars was driven by "two white girls," and the other was a black Monte Carlo with tinted windows. She could not see who was inside the Monte Carlo.

Alice Douglass, Ms. Buchanan's sister, testified that she was at the shopping center with Ms. Buchanan when the shooting occurred. She heard gunshots and turned and saw a black Monte Carlo with tinted windows speed away. Ms. Douglass testified that while Ms. Buchanan tended to Mr. Johnson, she went into a nearby store to use the telephone. She testified that the same black car drove by again, "[l]ooked at the body, whatnot, the guy. And said he didn't know that fool – they didn't know that fool. And then they left." Ms. Douglass testified that there were two black males inside the car. The driver had braids, and the passenger had a blue bandana around his face.

Katrina Frierson had two children with Petitioner. She testified that Petitioner told her that he killed Mr. Johnson. Ms. Frierson testified that in her initial interview with detectives, however, she did not state that Petitioner had told her that he killed Mr. Johnson. She testified that she did not tell detectives initially because Petitioner had threatened to "take [her] kids." On cross-examination, she testified that she had been charged with four counts of aggravated robbery. She was released from jail after her bond was reduced, which was after she agreed to testify in this case.

Ms. Frierson testified that Petitioner told her "that somebody had to pay." Petitioner told her that he had followed Mr. Johnson to a shopping center and "emptied his clip on him" when he came out of the store. He told her that Mr. Johnson was with "a white girl." He said that he was with "a couple of his home boys." She testified that Petitioner was "scared" and that he told her "that if anything happened to him to make sure [she] took care of his kids."

Ms. Frierson also testified that on October 24, 2003, Petitioner shot her television in her bedroom with a nine millimeter handgun. A neighbor heard the gunshot and called the police. When the police arrived, they found Petitioner hiding in her closet. She acknowledged that she initially lied to the police about Petitioner being in her home.

Officer Jacob Pilarski, of the Metro Nashville Police Department, responded to the incident at Ms. Frierson's house. When he arrived, he observed that the television "appeared

to be broken, shattered. The tube was shattered." He found "one spent shell casing" from a nine millimeter behind the television.

Officer Michael Pyburn, of the Metro Nashville Police Department, examined three projectiles and eight shell casings that were recovered from the scene of the shooting. He determined that two of the three bullets recovered from the scene were nine millimeter bullets that were fired from "an unknown firearm." The third bullet was a .45 caliber bullet that was fired from "a second unknown firearm." Officer Pyburn testified that seven of the eight discharged cartridge cases were Winchester .45 auto cartridge cases, and one was a discharged Remington nine millimeter Luger cartridge case. He also examined the three projectiles that were recovered from the victim's body. One was a nine millimeter projectile, which had insufficient markings to determine from what firearm it was discharged. The other two were .45 caliber projectiles that were fired from the same unknown .45 caliber firearm from which the projectiles found at the scene were fired. Officer Pyburn also examined the nine millimeter shell casing found in Ms. Frierson's home and determined that it was discharged by the same unknown nine millimeter handgun that fired the nine millimeter bullets and shell casings found at the crime scene. Officer Pyburn testified that "at least two different firearms" were fired at the crime scene.

Tamara Elliott, Clarence Elliott's wife and Eric Johnson's cousin, testified that on September 20, 2003, she was present when Mr. Elliott shot Terrence Gregory in their yard. She testified that Mr. Johnson was across the street painting. Ms. Elliott did not call the police after that incident. She testified that she learned from Petitioner that Mr. Johnson had been killed approximately two days after the shooting, when Petitioner went to her house and told her he "knocked [the victim] off." On cross-examination, Ms. Elliott did not tell detectives that Petitioner had admitted to her that he shot Mr. Johnson when she initially met with him. She also testified that she learned about Mr. Johnson being killed by "some woman on the street."

Terrence Gregory testified that he was with Petitioner and Petitioner's brother Montez Dickerson when Mr. Gregory was shot four times by Clarence Elliott on September 20, 2003. Petitioner had told Mr. Gregory that Mr. Elliott "wanted to buy some coke." Mr. Gregory believed that Petitioner and Montez Dickerson had set him up to be shot by Mr. Elliott. Mr. Gregory testified that he was incarcerated with Petitioner, and Petitioner told him that he did not set him up to be shot and that Mr. Johnson was one of the people who shot Mr. Gregory. Petitioner told Mr. Gregory that "he wasn't going to let him slide with that so he knocked him off."

Dawn Dickerson, Petitioner's sister-in-law, testified that Petitioner lived with her and Montez Dickerson in 2003. She testified that she was with Petitioner on the day of the

4

shooting. She testified that they were at home that morning, and that night, they were at Lacreissa Newbell's house for a birthday party for Montez Dickerson. They went to Ms. Newbell's house in the afternoon and stayed until after 11:00 p.m. She testified that she had never seen Defendant carrying a nine millimeter handgun.

Lacreissa Newbell testified that she had a party at her house for Petitioner on the date of the shooting. She testified that Petitioner arrived with Montez and Dawn Dickerson sometime between 3:00 and 4:00 p.m.

*Post-conviction hearing*

As noted in the original opinion filed in this case, Petitioner's appellate counsel acknowledged at the post-conviction hearing that he did not challenge the sufficiency of the convicting evidence on direct appeal. He testified that he reviewed the record in preparing the appellate brief. He believed that the evidence at trial was legally sufficient to support the indicted offense of first degree murder and the convicted offense of facilitation to commit first degree murder, although he did not recall evidence showing that Petitioner knew of another person intending to kill Mr. Johnson. Appellate counsel testified, "[i]t's generally true that if the evidence was legally sufficient to support the greater offense it would also be sufficient to support a lesser included offense." He stated his reasons for not challenging the sufficiency of the evidence on direct appeal as follows:

| [Appellate counsel]: | I don't recall any cases where the appellate courts reversed a conviction based on insufficient evidence while simultaneously holding that there was sufficient evidence to support a greater charge. |
|---|---|
| The State: | All right. Is that why you didn't include this as an issue? |
| [Appellate counsel]: | I think that may have been one reason. There – I think also given the proof that connected [Petitioner] to the murder weapon in the car from where the shots were fired, that that arguably could have supported a verdict for facilitation. |

5

**Analysis**

*Standard of review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40–30–103. To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40–30–110(f); *see Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). This court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. *Pylant v. State*, 263 S.W.3d 854, 867 (Tenn. 2008); *Sexton v. State*, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. *Momon*, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, our review is de novo with no presumption of correctness. *See, e.g., Smith v. State*, 357 S.W.3d 322, 355 (Tenn. 2011).

*Retroactive application of State v. Parker*

In determining whether Petitioner's appellate counsel was ineffective for failing to raise on direct appeal the sufficiency of the convicting evidence, we must first address the issue of whether the ruling in *State v. Parker*, 350 S.W.3d 883 (Tenn. 2011), is applicable. Appellate counsel testified at the post-conviction hearing that he relied upon case law that was specifically overruled by *Parker* in deciding not to challenge the sufficiency of the evidence on direct appeal. He also testified that he believed there was evidence at trial to support Petitioner's facilitation conviction.

In *Parker*, the Tennessee Supreme Court reviewed the sufficiency of the convicting evidence where the defendant had been indicted for felony murder but convicted of the lesser included offense of second degree murder. The court recognized, "[t]he issue before us is whether, in spite of the insufficient evidence to support the offense of second degree murder, the conviction should nevertheless be affirmed because there was sufficient evidence to support the greater offense of felony murder." 350 S.W.3d at 905. This court, relying on *State v. Mellons*, 557 S.W.2d 497 (Tenn. 1977), concluded that since the proof was sufficient to support the greater, indicted offense, the conviction for second degree murder "'survive[d] despite the deficient proof of its elements.'" *Parker*, 350 S.W.3d. at 905 (quoting *State v. Joshua Lynn Parker*, 2010 WL 3706090, at *12). Our supreme court reversed the conviction, overruling *Mellons*, and held that "a court reviewing the sufficiency

6

of the evidence must determine whether each element of the conviction offense is supported by sufficient proof." *Id*. at 909. The court stated, "when reviewing a convicted defendant's claim that the evidence is not sufficient to support his or her conviction, the review must be undertaken with respect to the crime of which the defendant was convicted, not the crime with which he was charged." *Id*. at 907 (citing *Jackson v. Virginia*, 443 U.S. 307, 324, n. 16, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

The State asserts that the supreme court's decision in *Parker* did not announce a new constitutional rule of law, and therefore, it should not be applied retroactively, citing *Meadows v. State*, 849 S.W.2d 748, 754 (Tenn. 1993) ("[A] new state constitutional rule is to be retroactively applied to a claim for post-conviction relief if the new rule materially enhances the integrity and reliability of the fact finding process of the trial."). Petitioner concedes that *Parker* did not announce a new rule of law and recognizes that the holding in *Parker* relied upon well-settled law in Tennessee. Petitioner contends, however, that it is precisely because the holding in *Parker* recognized an already established rule of law, "[t]here is no need for retroactive application of the holding in *Parker* in order for [Petitioner] to complain that the evidence in his case was not sufficient to support his conviction . . . [because], as recognized by the opinion in *Parker*, it has long been the law in Tennessee that a [d]efendant can do just that."

We note that in post-conviction cases, the retroactive application of a new constitutional rule analysis is generally relevant in the context of a post-conviction petition that is filed outside of the one-year statute of limitations. *See* Tenn. Code Ann. § 40-30-102(b)(1) (allowing for tolling of the statute of limitations where the claim in the petition is based upon an appellate court decision establishing a new rule of constitutional law that requires retroactive application). That is not the case here. There is not an issue regarding the timeliness of Petitioner's post-conviction petition. Rather, the issue is whether Petitioner's appellate counsel was ineffective for relying upon case law, decided prior to the supreme court's ruling in *Parker*, that seemed to hold that a conviction for a lesser included offense would be upheld, notwithstanding the lack of evidence to support the lesser included offense, where the evidence is sufficient to support a conviction for the greater charged offense. *See State v. Mellons*, 557 S.W.2d at 499.

In *Parker*, the supreme court examined the viability of the holding in *Mellons* and concluded that "[t]he proposition for which the majority [of the intermediate appellate court] relied on is, in fact, mere dictum." 350 S.W.3d at 907. The court noted that *Mellons* was predicated upon a statute that had long since been repealed. *Id*. (citing Tenn. Code Ann. § 40-2520 (1955)). The court based its conclusion on "subsequent developments in the law," including the United States Supreme Court's holding in *Jackson v. Virginia*, 443 U.S. at 316, 99 S. Ct. 2781, which provided that due process requires that every element of a

7

convicted offense be proven beyond a reasonable doubt and Tennessee Rule of Appellate Procedure 13(e), which provides that "[f]indings of guilt in criminal actions . . . shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt." The court also noted its 1999 decision in *State v. Burns*, in which the court adopted the test for analyzing lesser-included offenses. 6 S.W.3d 453 (Tenn. 1999). In *State v. Ely*, the court clearly stated that a lesser-included offense should be charged to the jury only when "the evidence is legally sufficient to support a conviction for the lesser-included offense." 48 S.W.3d 710, 722 (Tenn. 2001) (citing *Burns*, 6 S.W.3d at 467, 469). The court also noted that the legislature "echoed [its] holding in *Burns* with its passage of Tennessee Code Annotated section 40-18-110." *Parker*, 350 S.W.3d at 308. The court concluded, "[w]ith the elimination of the statutory support upon which *Mellons* relied, combined with the subsequent significant developments in our lesser-included offense jurisprudence and statutes, we are forced to conclude that *Mellons* does not control the outcome of this case." *Id.* at 909. The court also clarified its decision in *State v. Bolin*, 922 S.W.2d 870, 875 (Tenn. 1996), in which the court cited *Mellons*. The court stated,

> [a]s in *Mellons*, however, this Court did not actually hold in *State v. Bolin* [citation omitted] that a defendant may stand convicted of a lesser-included offense where there is no proof as to an element necessary to support the lesser-included offense, even if the proof would support the greater offense."

*Parker*, 350 S.W.3d at 910.

Our supreme court made clear by its holding in *Parker* that long-standing law prevents a defendant from being convicted of a lesser-included offense that is not supported by the proof, even when the greater charged offense is supported by the proof. Therefore, we agree with Petitioner in this instance. The State's argument is misplaced. The analysis of whether *Parker* announced a new rule of constitutional law and whether the holding in *Parker* should be retroactively applied is not necessary in the present case. If, as both parties assert, the holding in *Parker* was based on already established law in Tennessee, which existed at the time of Petitioner's conviction, then an appellate counsel could *arguably* have been deficient for failing to raise the issue of sufficiency of the evidence on appeal. As stated in our original opinion filed in this case,

> *Parker* supports Petitioner's assertion that his appellate counsel should have challenged the sufficiency of the evidence to support his conviction. In other words, appellate counsel should *not* have relied upon *Mellons* for the proposition that as long as there was sufficient evidence to sustain the conviction of the charged offense of premeditated first degree murder, then

8

Petitioner's challenge to the sufficiency of the evidence for the conviction of any lesser-included offense would automatically be without merit.

*Dickerson*, 2012 WL 2564376, at *12.

This, however, does not end our analysis. While, according to the analysis in *Parker*, appellate counsel should not have relied upon *Mellons* in deciding whether or not to challenge the sufficiency of the evidence, counsel may not have been ineffective for failing to raise the issue if the evidence at trial was, in fact, sufficient to support the lesser-included facilitation conviction.

*Sufficiency of the evidence*

Petitioner asserts that appellate counsel's performance was deficient because there was "no evidence presented at trial that [Petitioner] knew another intended to kill [Johnson], a required element" of the offense of facilitation, for which Petitioner was convicted. Petitioner also points to appellate counsel's testimony at the post-conviction hearing that he did not recall any evidence being presented at trial that Petitioner knew another intended to kill the victim. In order to determine whether appellate counsel's performance was deficient or whether Petitioner was prejudiced by any deficient performance, we must first analyze whether the evidence at trial was sufficient to support Petitioner's facilitation conviction.

A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony" of the State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, a guilty verdict removes the presumption of innocence and replaces it with one of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id*.

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d

9

at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392–93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *See Tuggle*, 639 S.W.2d at 914.

The offense of facilitation requires that a defendant, without the intent to promote or assist in the commission of the offense, knowingly furnishes substantial assistance in the commission of the offense and that the defendant knew the other person intended to commit the offense. Tenn. Code Ann. § 39-11-403(a). The applicable definition of first degree murder is "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). Premeditation necessitates "a previously formed design or intent to kill," *State v. West*, 844 S.W.2d 144, 147 (Tenn.1992) (citations omitted), and "an act done after the exercise of reflection and judgment . . . [meaning] that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39-13-202(d). In order to support Petitioner's conviction for facilitation of first degree murder, the evidence must establish that Petitioner knew that another person intended to commit premeditated murder and that Petitioner furnished substantial assistance in the commission of the offense. *See id*.

The proof clearly establishes that the murder was premeditated. Viewed in the light most favorable to the State, a vehicle with at least two individuals inside drove up to where the victims were standing in a parking lot and stopped. At least one gunman fired multiple shots at the victims, and the car then fled the scene. The proof establishes that two weapons were fired, and one of the weapons was used by Petitioner five days after the murder when he shot at Ms. Frierson's television. The State argues that the jury could have reasonably concluded that Petitioner assisted in the murder of Eric Johnson. The evidence that the State relies upon in its assertion that there was proof of facilitation is Ms. Thompson's testimony that she saw two men inside the shooter's car and that one of them was firing a gun; Ms. Douglass' testimony that she also saw two men in the car fleeing the parking lot after she heard gunshots; and Ms. Frierson's testimony that Petitioner told her he was with "a couple of his home boys" when Johnson was killed. The State further asserts that the jury could

10

have found Petitioner's confessions to Frierson and Terrence Gregory, that he killed Mr. Johnson, not credible.

We conclude that although the proof of facilitation is not overwhelming, the jury could have inferred that Petitioner was the second individual in the car, but that he was not the shooter; that one of the weapons used by the shooter to kill the victim was a nine millimeter handgun provided the shooter by Petitioner; and that Petitioner knew that the shooter intended to kill the victim because he was in the car with the shooter and the shooter used his gun to commit the murder. None of the witnesses could identify Petitioner as the shooter. Two witnesses testified that there were two people inside the shooter's car. Ballistics evidence showed that Petitioner was in possession of one of the murder weapons four days after the murder.

As instructed by this court in the order granting Petitioner's request for rehearing, both parties cite and address the applicability of *State v. Joseph Bernette Driver*, No. M2011-00536-CCA-R3-CD, 2012 WL 3776671 (Tenn. Crim. App. Aug. 31, 2012). In that case, the defendant challenged his conviction for facilitation of aggravated robbery as a lesser-included offense of aggravated robbery. Specifically, the defendant asserted that the evidence was not sufficient that he had knowledge of the robbery or that he substantially assisted the robber. In that case, as in the present case, there was evidence at trial that another individual who was never apprehended was involved in the commission of the offense. A panel of this court held that the jury could have reasonably concluded, based on evidence of another individual, that the defendant facilitated the robbery. This court stated in that opinion,

> As an initial matter, this Court distinguishes the facts in *Parker* from those in this case. In *Parker*, the proof did not support one of the elements required to sustain a second degree murder conviction. Here, as outlined in detail below, the evidence is sufficient to support the jury's finding that the Defendant's actions satisfied the elements of facilitation of aggravated robbery, even if some of the proof presented is inconsistent with an element or elements of facilitation. *Inconsistent evidence, which may be rejected by a jury, is not synonymous with insufficient, or a lack of, evidence of an element.*

*Driver*, 2012 WL 3776671, at *9. (Emphasis added).

We conclude that the evidence was sufficient in this case to sustain Petitioner's conviction for facilitation of first degree murder.

11

*Ineffectiveness of counsel*

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this Court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. *See Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975).

The principles for determining the effectiveness of counsel at trial and on appeal are the same in a post-conviction proceeding. *See Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995). A petitioner alleging ineffective assistance of appellate counsel must proof both that 1) appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and 2) absent counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful before the state's highest court. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Appellate counsel is not constitutionally required to raise every conceivable issue on appeal. *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004). The decision as to which issues to raise on appeal is generally within appellate counsel's discretion and "should be given considerable deference . . . if such choices are within the range of competence required of attorneys in criminal cases." *Id*.

Because we conclude that the evidence was legally sufficient to support Petitioner's conviction on appeal, we cannot therefore conclude that appellate counsel's performance was deficient for failing to challenge the sufficiency of the evidence. Furthermore, Petitioner could not have been prejudiced by counsel's performance, even if it was deficient, where he would not be entitled to relief on appeal had appellate counsel raised the issue. Therefore, Petitioner is not entitled to relief.

**CONCLUSION**

The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE